# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-05-00553-CR

**Christopher Damien Capello, Appellant**

**v.**

**The State of Texas, Appellee**

**FROM THE DISTRICT COURT OF CALDWELL COUNTY, 274TH JUDICIAL DISTRICT
NO. 2003-169, HONORABLE TODD A. BLOMERTH, JUDGE PRESIDING**

## M E M O R A N D U M   O P I N I O N

The jury convicted appellant Christopher Damien Capello of the third-degree felony offense of Assault—Family Violence. *See* Tex. Pen. Code Ann. § 22.01(b)(2) (West Supp. 2005). Punishment was assessed at twenty years' confinement and a $5,000 fine. In five issues on appeal, Capello asserts that the district court erred in not granting a mistrial due to improper jury argument, not instructing the jury on self-defense, and admitting the expert testimony of a licensed professional counselor who testified about the behavior of typical victims of domestic violence. We will affirm the judgment of the district court.

## BACKGROUND

The jury heard evidence that, on the night of December 6, 2002, Capello assaulted his soon-to-be wife, Shirley Estrada.[1] Estrada testified that she and Capello were part of a group that spent the afternoon drinking beer at Lillie's Bar in Lockhart. Estrada testified that they left the bar and drove to the home of Capello's sister, Christine Garza. The group at the house included Garza and her four children; Capello's half-brother Tony; Garza's estranged husband Rudy; and Rene Perez, Garza's boyfriend. Estrada testified that Capello, Tony, and Perez were inside the home's only bathroom, apparently smoking marihuana. Estrada explained that she was arguing with Capello through the door and that, when he opened the door and she tried to enter the bathroom, he slapped her and then punched her in the face. Estrada further testified that, after being hit in the face, she fell to the floor, where Capello kicked her in the stomach and continued to punch her in the face.

Estrada testified that, after she and Capello returned to their home later in the night, she wanted to call the police but Capello told her "that he was sorry" and asked her "not to call" the police, but that if she did, to "tell them that some girls had jumped [her] at the bar." Estrada left the house and called 911 from a pay phone, requesting an ambulance. Police officers arrived before EMS, and Estrada told the police that she had been "jumped" by some girls at a bar. Estrada testified that this was a lie and that she told this lie because she was scared of Capello. Police approached Capello in the kitchen to ask him some questions, but he was holding a knife and refused to put it down. One of the officers testified that Capello was then "introduced to pepper spray" and arrested. When EMS arrived, Estrada was transported to Brackenridge Hospital.

---

[1] Capello and Estrada were married in February 2003, but later separated.

Capello was indicted for assault. During the first trial the jury was deadlocked, resulting in a mistrial. Capello was convicted in the second trial. This appeal followed.

## DISCUSSION

**Motion for mistrial**

In his first issue, Capello asserts that the trial court abused its discretion by not granting a mistrial after the State referred to facts outside the record during closing argument. In its closing rebuttal, the State informed the jury that Rene Perez had testified at a "prior hearing" and that Perez "didn't know what happened in the bathroom at the previous hearing." Capello objected, and the district court sustained the objection. Capello also asked for a mistrial, which the district court denied. However, the district court did instruct the jury to "disregard any comments made with regard to something that did or didn't happen at a prior hearing."

We review a trial court's decision to deny a motion for mistrial under an abuse-of-discretion standard of review. *Wead v. State*, 129 S.W.3d 126, 129 (Tex. Crim. App. 2004). When a trial court sustains an objection and instructs the jury to disregard, we presume the jury complies with the court's instruction. *See Colburn v. State*, 966 S.W.2d 511, 520 (Tex. Crim. App. 1998). An argument that exceeds permissible bounds will not amount to reversible error unless, in light of the record as a whole, the argument is extreme or manifestly improper, violates a mandatory statute, or injects new facts harmful to the defendant. *Wesbrook v. State*, 29 S.W.3d 103, 115 (Tex. Crim. App. 2000). An instruction to disregard will generally cure the error unless the State's remarks constituted a wilful and calculated effort to deprive the defendant of a fair and impartial trial. *Id.*

3

The State admits that it was improper to argue that a witness, who did not testify in the second trial, had testified in the first trial to the effect that he did not know what happened in the bathroom. However, in light of the record as a whole, we do not believe this remark "constituted a wilful and calculated effort to deprive the defendant of a fair and impartial trial." *See id*. There was evidence that Rene Perez and other witnesses had been drinking and possibly smoking marihuana the night of the incident. It is hardly "extreme or manifestly improper" to comment that Perez was unable to remember what happened on the night in question. *See id*. We also disagree with Capello that Rene Perez's alleged knowledge of what happened was critical to Capello's defense. Our review of the record persuades us that the case turned on the credibility of the complainant, Estrada, and not the knowledge or the lack thereof of a witness who did not testify. The district court instructed the jury to disregard the comment about Perez's lack of knowledge and, on this record, we will presume the jury did so. *See Colburn*, 966 S.W.2d at 520. We overrule Capello's first issue.

**Instruction on self-defense**

In his second issue, Capello asserts that the district court erred by refusing to instruct the jury on the law of self-defense in the face of apparent danger. *See* Tex. Pen. Code Ann. § 9.31 (West 2003).

A defendant is entitled to an instruction on any defensive issue raised by the evidence, whether that evidence is weak or strong, unimpeached or contradicted, and regardless of the trial court's opinion about the credibility of the defense. *Granger v. State*, 3 S.W.3d 36, 38 (Tex. Crim. App. 1999); *VanBrackle v. State*, 179 S.W.3d 708, 712 (Tex. App.—Austin 2005, no pet.). This rule

4

is designed to insure that the jury, not the trial court, will decide the relative credibility of the evidence. *Granger*, 3 S.W.3d at 38. A defendant need not testify in order to raise a defense. *Boget v. State*, 40 S.W.3d 624, 626 (Tex. App.—San Antonio 2001), *aff'd*, 74 S.W.3d 23, 31 (Tex. Crim. App. 2002). Defensive issues may be raised by the testimony of any witnesses, even those called by the State. *Jackson v. State*, 110 S.W.3d 626, 631 (Tex. App.—Houston [14th Dist.] 2003, pet. ref'd); *Shelvin v. State*, 884 S.W.2d 874, 878 (Tex. App.—Austin 1994, pet. ref'd). In deciding whether a defensive theory is raised, the evidence is viewed in the light most favorable to the defense. *Granger*, 3 S.W.3d at 38.

A person has the right to defend himself from apparent danger to the same extent as he would if the danger were real. *Hamel v. State*, 916 S.W.2d 491, 493 (Tex. Crim. App. 1996). Whether a defendant's beliefs were reasonable under the circumstances is a fact question for the jury to decide, not a preliminary question for the court to evaluate in determining whether the defense is raised. *Hayes v. State*, 728 S.W.2d 804, 808 (Tex. Crim. App. 1987).

A person is justified in using force when and to the degree he reasonably believes the force is immediately necessary to protect himself against the other's use or attempted use of unlawful force. *See* Tex. Pen. Code Ann. § 9.31(a) (West 2003). The statute necessarily contemplates that the force used by a defendant must be reasonable as contemplated from the defendant's point of view. *Dyson v. State*, 672 S.W.2d 460, 463 (Tex. Crim. App. 1984) ("A person has a right to defend from apparent danger to the same extent as he would had the danger been real; provided he acted upon reasonable apprehension of danger as it appeared to him at the time."). For Capello to be entitled to an instruction on self-defense, there must be evidence in the record relating to Capello's

state of mind at the time of the incident. *See Reed v. State*, 703 S.W.2d 380, 384 (Tex. Crim. App. 1985).

There is no evidence in the record that Capello reasonably believed that force was necessary to protect himself against Estrada. There is some evidence, from the testimony of Capello's sister, that Estrada forced the bathroom door open before she entered, but there is no evidence that this action put Capello in reasonable apprehension of danger. Capello did not testify, and no other witness testified as to what Capello might have been thinking when Estrada entered the bathroom.[2] *See Lavern v. State*, 48 S.W.3d 356, 360 (Tex. App.—Houston [14th Dist.] 2001, pet. ref'd) (*"While a non-testifying defendant may be entitled to a charge on self-defense, it is rare for the defense to be raised when the defendant fails to testify."*). Because there was no evidence that Capello was in reasonable apprehension of danger when he attacked Estrada, he was not entitled to a jury instruction on the issue of self-defense. *See id*. We overrule Capello's second issue.

**Expert testimony**

In his third, fourth, and fifth issues, Capello contends that the district court abused its discretion by admitting the expert testimony of licensed professional counselor Taylor Skaar regarding "the cycle of abuse." Capello asserted at trial and on appeal that the testimony was irrelevant, more prejudicial than probative, and that it "indirectly bolstered" Estrada's testimony.

---

[2] Capello asked Garza on cross-examination, "If you had been in Chris' shoes, would it have been reasonable for you to think that maybe someone was coming in to join the fight?" Garza answered, "Yes." However, the State objected to this testimony on the basis of speculation and moved to strike the answer. The district court sustained the objection and instructed the jury to disregard. Therefore, we cannot consider this testimony in our analysis.

To admit expert testimony, the trial court must find that the evidence satisfies both Rule 702, that the testimony will be helpful to the trier of fact, and Rule 403, that the testimony's probative value is not outweighed by any prejudicial effect. Tex. R. Evid. 403, 702; *Jordan v. State*, 928 S.W.2d 550, 554 (Tex. Crim. App. 1996); *Kelly v. State*, 824 S.W.2d 568, 572 (Tex. Crim. App. 1992). We review the trial court's decision to admit expert testimony for an abuse of discretion. *Carrasco v. State*, 154 S.W.3d 127, 129 (Tex. Crim. App. 2005). We must uphold the district court's ruling if it is reasonably supported by the record and is correct under any theory of law applicable to the case. *Id*. We review the ruling of the district court in light of what was before it at the time the ruling was made. *Id*.

### *Relevance under Rule 702*

In his third issue, Capello asserts that Skaar's testimony is inadmissible because it is irrelevant. Expert testimony is admissible when scientific, technical, or other specialized knowledge will assist the trier of fact in understanding the evidence or in determining a fact in issue. *See* Tex. R. Evid. 702; *Cohn v. State*, 804 S.W.2d 572, 575 (Tex. App.—Houston [14th Dist.] 1991), *aff'd*, 849 S.W.2d 817 (1993). Evidence admissible under Rule 702 may include testimony that compares general or classical behavioral characteristics of a certain type of victim with the specific victim's behavior patterns. *Scugoza v. State,* 949 S.W.2d 360, 363 (Tex. App.—San Antonio 1997, no pet.); *see also Fielder v. State*, 756 S.W.2d 309, 321 (Tex. Crim. App. 1988) (finding that expert testimony aided trier of fact where it explained inconsistency in appellant's behavior consistent with that of typical battered women).

The average juror cannot be expected to be familiar with how typical victims of domestic violence behave. *See Scugoza*, 949 S.W.2d at 363. Skaar testified regarding the emotional and behavioral patterns typical of battered women and explained why some victims of domestic violence do not immediately report the abuse. Skaar testified that the behavior of a hypothetical woman initially denying her abuse was consistent with the behavior of the typical battered woman.

There was evidence that Estrada lied to authorities about what happened on the night in question and delayed reporting the incident. Skaar's testimony was helpful to the jury in understanding why a victim of domestic violence might behave this way. The district court did not abuse its discretion in determining that Skaar's testimony would assist the trier of fact in understanding the evidence and resolving the ultimate fact issue: what happened to Shirley Estrada. Accordingly, the evidence was relevant to the case. We overrule Capello's third issue.

### Unfair prejudice under Rule 403

In his fourth issue, Capello asserts that Skaar's testimony was more prejudicial than probative under Rule 403. Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, or needless presentation of cumulative evidence. Tex. R. Evid. 403. Relevant evidence must be excluded when there is a clear disparity between the degree of prejudice of the offered evidence and its probative value. *Jones v. State*, 944 S.W.2d 642, 653 (Tex. Crim. App. 1996).

To violate Rule 403, it is not enough that the evidence is "prejudicial"—it must be *unfairly* prejudicial. *Vasquez v. State*, 67 S.W.3d 229, 240 (Tex. Crim. App. 2002). Unfair

prejudice occurs when the evidence has "an undue tendency to suggest decision on an improper basis, commonly, though not necessarily, an emotional one." *Id*. The trial court's ruling to admit evidence over a Rule 403 objection is measured by an abuse-of-discretion standard. *Montgomery v. State*, 810 S.W.2d 372, 391 (Tex. Crim. App. 1990). The ruling is not an abuse of discretion if it was within the "zone of reasonable disagreement." *Id*.

We conclude that the district court did not abuse its discretion in determining that the danger of unfair prejudice from Skaar's testimony did not substantially outweigh its probative value. The testimony was limited to hypothetical situations involving victims of domestic violence. Skaar did not testify about the specific situation between Estrada and Capello. On the other hand, Skaar's testimony was probative of how typical victims of domestic violence behave, which provided an explanation for why Estrada behaved the way she did after the incident. *See Prible v. State*, 175 S.W.3d 724, 733 (Tex. Crim. App. 2005) (when evidence tends to corroborate testimony of "key witness" in State's case, probative value is "relatively strong").

Furthermore, even assuming that the district court abused its discretion in admitting Skaar's testimony, Capello is not entitled to reversal unless he shows that the error was: (1) of constitutional magnitude, or (2) affected a substantial right. Tex. R. App. P. 44.2(a), (b). The erroneous admission of expert testimony is non-constitutional error. *See Sexton v. State*, 93 S.W.3d 96, 101 (Tex. Crim. App. 2002). Accordingly, the error must be disregarded unless Capello's substantial rights are affected. Tex. R. App. P. 44.2(b). Substantial rights are not affected by the erroneous admission of evidence if the appellate court, after examining the record as a whole, has fair assurance that the error did not influence the jury, or had but a slight effect. *Motilla v. State*, 78 S.W.3d 352, 355 (Tex. Crim. App. 2002); *Johnson v. State*, 967 S.W.2d 410, 417 (Tex. Crim. App.

9

1998).  In assessing the likelihood that the jury's decision was adversely affected by the error, the appellate court should consider everything in the record, including any testimony or physical evidence admitted for the jury's consideration, the nature of the evidence supporting the verdict, the character of the alleged error, and how it might be considered in connection with other evidence in the case. *Motilla*, 78 S.W.3d at 355. We may also consider the jury instructions, the State's theory and any defensive theories, closing arguments, and even voir dire, if applicable. *Id*. at 355-56.  We may also consider whether the State emphasized the error. *Id*. at 356.

The State did not emphasize Skaar's testimony in its closing argument, mentioning it only briefly when explaining why Estrada may have lied to the police.  Even without Skaar's testimony, there was enough evidence for a rational jury to conclude that Capello assaulted Estrada. In addition to Estrada's account of what happened to her, the jury heard Capello's sister, Christine Garza, testify that Estrada "had blood on her face" after the incident with Capello.  The jury also heard Heidi Weir, Estrada's manager at the convenience store where she worked, testify that, when Estrada came in to work the day after the incident, Estrada's "eye was swollen and it was bruised, and she looked like crap."  Weir also testified that Estrada told her Capello had hurt her:

> Q:  Do you know how Shirley got that bruise on her eye or how her eye was swollen shut?
>
> A:  Yes, ma'am.
>
> Q:  How did she get that bruise on her eye?
>
> A:  Chris.
>
> . . . .
>
> Q:  Who told you it was Chris?

A: Shirley.

Q: And when did she tell you this?

A: Friday night, when she called me and stated that she needed to go to the hospital.

The jury also heard the paramedic who accompanied Estrada to the hospital testify that Estrada had "bruising on her face" and "two very large hematomas around her eyes" that were "not consistent with being attacked by a female" as Estrada had previously claimed. Finally, the jury heard testimony from Officer Steven Vollmar, who responded to Estrada's 911 call. Vollmar testified that Estrada "had signs about her face that she had possibly been assaulted. . . . [O]ne of her eyes was red, started to swell. She had signs of swelling around the face. And around the nose and mouth area there was some indication of blood." The jury also saw photographs of Estrada's injuries when she was taken to the hospital. In light of this other evidence supporting the verdict, we conclude that any error in the admission of Skaar's testimony was harmless. We overrule Capello's fourth issue.

### Bolstering

In his fifth issue, Capello asserts that Skaar's testimony constituted "indirect bolstering" of Estrada's testimony.

Bolstering occurs when evidence is admitted for the sole purpose of convincing the fact finder that a particular witness or source of evidence is worthy of credit, without substantively contributing to make the existence of a fact that is of consequence to the determination of the action more or less probable than it would be without the evidence. *Cohn v. State*, 849 S.W.2d 817, 819-20 (Tex. Crim. App. 1993); *Arzaga v. State*, 86 S.W.3d 767, 776 (Tex. App.—El Paso 2002, no pet.).

11

Accordingly, if the evidence makes any substantive contribution, even if it only incrementally tends to further establish a fact of consequence, it is not bolstering. *Cohn*, 849 S.W.2d at 819-20.

As we have already explained, Skaar's testimony contributed to the jury's understanding of why typical victims of domestic violence behave the way they do. However, Skaar did not testify as to whether she believed Estrada's testimony was truthful, nor did she make any reference to Estrada's specific situation. In fact, she testified that she had "no personal knowledge of this case at all." She testified that she never met Estrada and had not even "heard anything about her." Because Skaar expressed no opinion regarding Estrada's truthfulness, her testimony cannot be considered bolstering. *See id*. at 820 ("[E]vidence that corroborates another witness's story or enhances inferences to be drawn from another source of evidence, in the sense that it has an incrementally further tendency to establish a fact of consequence, should not be considered 'bolstering.'"). We overrule Capello's fifth issue.

## CONCLUSION

Having overruled Capello's issues on appeal, we affirm the judgment of the district court.

_____

Bob Pemberton, Justice

Before Chief Justice Law, Justices Puryear and Pemberton

Affirmed

Filed:   August 25, 2006

Do Not Publish

12