

COURT OF APPEALS
EIGHTH DISTRICT OF TEXAS
EL PASO, TEXAS

| | | |
|---|---|---|
| EDUARDO CARRILLO, | § | |
| | | No. 08-11-00076-CR |
| Appellant, | § | |
| | | Appeal from the |
| v. | § | |
| | | 168th District Court |
| THE STATE OF TEXAS, | § | |
| | | of El Paso County, Texas |
| Appellee. | § | |
| | | (TC#20100D02440) |
| | § | |

## **O P I N I O N**

Appellant Eduardo Carrillo appeals from a jury conviction on two counts of family-violence assault, arguing that the trial court failed to correctly apply the law of self-defense in the jury charge and erroneously admitted hearsay evidence, and the evidence is legally insufficient to sustain his convictions. For the reasons that follow, we affirm.

### BACKGROUND

Appellant was charged by indictment with two felony counts of family-violence assault. *See* TEX. PENAL CODE ANN. § 22.01 (West 2011). Count one alleged that Appellant intentionally, knowingly, or recklessly caused bodily injury to Zandra Carreto, a member of his family, household, or a person with whom he has or has had a dating relationship, by intentionally, knowingly, or recklessly impeding her normal breathing or circulation of blood by blocking her nose or throat. Count two alleged that Appellant intentionally, knowingly, or recklessly caused

bodily injury to Zandra Carreto, a person with whom he has or has had a dating relationship, by striking her about the face. An enhancement paragraph followed each count alleging that Appellant had a prior conviction for an offense against a member of his family or household under Section 22.01 of the Texas Penal Code. Appellant stipulated to the enhancement paragraph but pleaded "not guilty" to the charged offenses. A jury found Appellant guilty as charged in both counts and assessed punishment at 11 years' imprisonment on each count to run concurrently and imposed a $5,000 fine for each count.

At trial, Sergeant Chris Hendricks ("Sergeant Hendricks") and Officer Zachary Kiesel ("Officer Kiesel") of the El Paso Police Department testified for the State. On April 24, 2010, between 4 a.m. and 4:30 a.m., Sergeant Hendricks was dispatched to an apartment located at 5249 Wren in reference to a 9-1-1 hang-up call.[1] Officer Kiesel and his partner, Nicolas Iachini ("Officer Iachini"), approached the apartment with Sergeant Hendricks.

When the officers knocked on the door of the apartment, Zandra Carreto answered the door. Based on his training and experience, Sergeant Hendricks testified that Carreto was slightly intoxicated. He stated that he did not have any problems understanding Carreto and that she appeared coherent enough to accurately relate historical facts. Upon entering the apartment, Sergeant Hendricks saw Appellant sitting on the couch in the living area and did not see any other individuals in the apartment at that time. The officers immediately separated Appellant and Carreto in order to find out what had happened. Officer Kiesel spoke with Appellant in the living room and Sergeant Hendricks and Officer Iachini moved Carreto to a bedroom in the back of the apartment.[2]

---

[1] An audio recording of four 9-1-1 calls was admitted into evidence and played to the jury.
[2] In the bedroom, they encountered a six-year-old girl who was identified as the daughter of Carreto and Appellant.

2

According to Sergeant Hendricks, Carreto appeared to be upset, had been crying, had tears under her bloodshot eyes, her hands trembled, her breath was stuttered and heaving, and had blood on her lip. During the officers' interview of Carreto, she stated that she and Appellant had been out drinking and had gotten into a verbal argument which turned physical once they returned home.[3] Carreto told the officers that Appellant hit her on the face, sat down on top of her while on the bed, grabbed her by the hair, pulled her down, and put his hand over her mouth and nose. Carreto relayed that she bit Appellant's thumb because she could not breathe. She also stated that when she called the police, Appellant took the phone away from her.

At trial, Officer Kiesel testified that Appellant seemed to be intoxicated because a strong odor of alcohol emanated from him, he had very slow movements and reactions, and he had slurred speech. When Officer Kiesel asked Appellant to tell him what had happened that night, Appellant did not want to talk and only stated that "it didn't matter." After the interviews were conducted, the officers determined that they had probable cause to place Appellant under arrest. After being placed under arrest, Appellant told the officers that "he was just trying to leave," "but [Carreto] would not let him leave" and that Carreto had bit him on the hand.

The police took photographs of Carreto. Photographs of Appellant's hands were also taken to document his claim of having been bitten by Carreto. These photographs were admitted in evidence at trial. On cross-examination, when shown a picture of Carreto's face, Sergeant Hendricks pointed out bruising, a small cut on the inside of the bottom lip, and redness around the top of the lip and around the edge of the nose, as being indicative that Carreto's face was smothered by somebody's hands.

---

[3] Appellant raised a hearsay objection to the statements Carreto made to the officers. The State argued that the statements were admissible under the excited utterance or present-sense impression hearsay exceptions. The trial court permitted the statements to come in as a present-sense impression.

3

The defense called Carreto as its only witness. Carreto refuted the charges she had previously made against Appellant. She testified that she had lived with Appellant for ten years, had been involved in a romantic relationship with him, and had a daughter, aged seven, with him.[4]

Carreto related that on the night of April 24, 2010, she and Appellant had gone out to a bar to drink with friends. After they left the bar, they went to the house of one of Appellant's friends where Appellant bought cocaine. They then returned to the apartment, where Carreto relieved the neighbor who had been watching her two sons and checked on her children.

Carreto testified that by the time she and Appellant returned home, she was very intoxicated, had been taunting Appellant and "was like instigating a fight." She stated that she and Appellant went to the bedroom and started to make love. At that time, Appellant received a phone call but would not let Carreto see the phone. Carreto became upset, and started to yell and push Appellant because she wanted the phone, which Appellant refused to give to her. Carreto was worried that another female had called Appellant and their struggle over the phone escalated.

As the two were struggling over the phone, Carreto testified that as they wrestled on and off the bed, and bumped into the door and walls, she tried to pry the phone out of Appellant's hands and bit his finger. When Appellant pushed Carreto away, she grabbed her phone which Appellant then took away and broke. Carreto stated that she eventually got Appellant's phone because he had dropped it. When she passed a mirror, she noticed her lip was bleeding and she became infuriated and so she threatened to call the cops on Appellant and told him that "he was going to pay for making [her] go through that." Carreto testified that she may have busted her lip

---

[4] She also testified that she had two sons aged eleven and ten who lived at the apartment in April 2010, and who are not Appellant's children.

during the struggle over the phone and stated that it was not intentional. Carreto denied being hit, struck, or hurt in any manner by Appellant.

Carreto stated that Appellant had both the phone and the Bluetooth device and that she was only able to call the police when she got the phone away from Appellant after biting him. Carreto testified that she tried to call the police, but was unable to talk to them because the phone's Bluetooth was enabled and because she did not have the earpiece. Carreto admitted that during most of the time when she had possession of the phone and was talking, she was unaware that she was actually in communication with 9-1-1. Carreto agreed that at that time she had no reason to be lying or saying untrue things and agreed that the 9-1-1 tape recordings would accurately reflect this.

Carreto testified that she had not heard the 9-1-1 tape recordings from April 24, 2010, and stated that she could have said a lot of things when she called the police because she was drunk, angry, and out to get Appellant because he would not give her the phone.[5] She testified that she made up the allegations that Appellant had hit her and had tried to strangle her because she knew Appellant would get in trouble. Carreto tried to contact somebody in the D.A.'s office to let them know that she wanted to drop the charges against Appellant because everything she had said was not true. Carreto testified that she was not lying in court and understood that she could be charged for presenting a false police report.

## DISCUSSION

### JURY CHARGE ERROR

In Issue One, Appellant contends that the trial court erred by failing to include an

---

[5] She agreed that she could have made the following statements when she called 9-1-1: "You're going to pay for what you did," "You F-ing hit me," "You're a coward," "You told me you're not going to F-ing hit me. You're F'd," "He hit me in the F-ing mouth. Then he hit me in the face."

5

instruction on self-defense in the application paragraph of the jury charge and in failing to apply the law of self-defense to the facts of the case. Specifically, Appellant claims the testimony provided by Carreto at trial was sufficient evidence to support a self-defense instruction. The State responds that Appellant was not entitled to a self-defense instruction because Appellant never admitted to committing the offense and presented no evidence showing that he used force against Carreto to defend himself against her and, thus, the defense was never raised by the evidence.

*Standard of Review*

Our review of alleged jury-charge error begins with a determination of whether an error actually exists in the charge and, if so, whether that error caused sufficient harm to require reversal. *Ngo v. State*, 175 S.W.3d 738, 744 (Tex. Crim. App. 2005); *Almanza v. State*, 686 S.W.2d 157, 171 (Tex. Crim. App. 1984), *superseded on other grounds by rule as stated in Rodriguez v. State*, 758 S.W.2d 787 (Tex. Crim. App. 1988); *Rubio v. State*, 203 S.W.3d 448, 451 (Tex. App. – El Paso 2006, pet. ref'd). The degree of harm required for reversal depends on whether the defendant preserved the error by objection. *Ngo*, 175 S.W.3d at 743. When, as here, a defendant fails to object to the charge, the record must show "egregious harm" to obtain reversal. *Id*. at 743-44. Egregious harm exists when the defendant is denied a fair and impartial trial. *Id*. at 750. Egregious harm errors affect the very basis of the case, deprive the defendant of a valuable right, vitally affect the defensive theory, or make a case for conviction clearly and significantly more persuasive. *Id*. In determining whether harm has resulted, "the actual degree of harm must be assayed in light of the entire jury charge, the state of the evidence, including the contested issues and weight of probative evidence, the argument of counsel and any other relevant information revealed by the record of the trial as a whole." *Almanza*, 686 S.W.2d at 171.

*Application*

The trial court instructed the jury on the law of self-defense in the abstract portion of the charge, but failed to include an application paragraph on self-defense. The State objected to the inclusion of the law of self-defense arguing that the testimony did not raise the issue of self-defense. Although Appellant requested that a self-defense instruction be included in the charge, he did not object to the charge as given. A defendant is entitled to an instruction on every defensive issue raised by the evidence, regardless of whether that evidence is weak or strong, unimpeached or uncontradicted, and regardless of what the trial court may think about the credibility of the defense. *Allen v. State*, 253 S.W.3d 260, 267 (Tex. Crim. App. 2008); *see East v. State*, 76 S.W.3d 736, 737 (Tex. App. – Waco 2002, no pet.). However, a defendant is not entitled to a self-defense instruction if, viewing the evidence in the light most favorable to the defendant, he fails to establish self-defense. *Ex parte Nailor*, 149 S.W.3d 125, 132 (Tex. Crim. App. 2004); *see also Dyson v. State*, 672 S.W.2d 460, 463 (Tex. Crim. App. 1984) (self-defense instruction required only if the evidence raises the issue).

An instruction to the jury is not appropriate when the defensive evidence fails to essentially admit to "every element" of the offense. *See Shaw v. State*, 243 S.W.3d 647, 659 (Tex. Crim. App. 2007). Instead, the evidence must establish the defendant admitted committing the conduct but justified or excused his conduct so as to absolve himself of criminal responsibility for acts that would otherwise constitute a crime. *See Nailor*, 149 S.W.3d at 133 n.33. Moreover, if a defendant through the testimony on the matter, claims that he did not perform the alleged assaultive acts, he is not entitled to a self-defense instruction. *See VanBrackle v. State*, 179 S.W.3d 708, 715 (Tex. App. – Austin 2005, no pet.).

Here, Appellant was charged with one count of family-violence assault by strangulation

7

and one count of family-violence assault, enhanced. Although Appellant did not testify at trial, Carreto's testimony was that, on the night in question, she and Appellant got into a physical struggle over a phone. Carreto testified that Appellant did not strike her, hit her, or hurt her in any manner. She further testified that the report she gave to police did not happen. In effect, Carreto's testimony on behalf of the defense was that Appellant did not commit the alleged assaultive acts. Therefore, we conclude Appellant was not entitled to a self-defense instruction because there was no evidence that Appellant admitted to the charged offenses or that he acted in self-defense. *See Nailor*, 149 S.W.3d at 133-34; *VanBrackle*, 179 S.W.3d at 715.

We recognize that the Texas Court of Criminal Appeals has held that when a trial court charges the jury on self-defense, any flaw in the charge on self-defense amounts to error in the charge. *See Barrera v. State*, 982 S.W.2d 415, 416 (Tex. Crim. App. 1998). However, *Barrera* is distinguishable because in that case there was evidence that the defendant acted in self-defense, and as such he was entitled to a self-defense jury instruction. *See id*. at 416-17; *Barrera v. State*, 10 S.W.3d 743, 745 (Tex. App. – Corpus Christi 2000, no pet.); *see also Barrera v. State*, 951 S.W.2d 153, 155-56 (Tex. App. – Corpus Christi 1997), *rev'd*, 982 S.W.2d 415, 416 (Tex. Crim. App. 1998). By contrast, the record here is devoid of any evidence that would require the trial court to charge upon the law of self-defense, and thus, we conclude that the trial court did not err by failing to include a jury instruction on self-defense in the application paragraph of the charge. *See Juarez v. State*, 961 S.W.2d 378, 381 (Tex. App. – Houston [1st Dist.] 1997, pet. ref'd) (failure to include an application paragraph on a defensive issue not raised by the evidence is not error even when an abstract instruction on the issue has been incorrectly submitted to the jury); *Hutcheson v. State*, 899 S.W.2d 39, 43 (Tex. App. – Amarillo 1995, pet. ref'd) (holding that trial court was not required to apply abstract instruction on defensive issue to facts of case when

8

evidence failed to raise the issue); *Washington v. State*, No. 14-02-01174-CR, 2003 WL 22707070, at *5 (Tex. App. – Houston [14th Dist.] Nov. 18, 2003, no pet.) (holding that the omission of an application paragraph on a defensive issue not supported by the evidence and improperly submitted to the jury does not result in error under *Barrera*).   Issue One is overruled.

## ADMISSION OF HEARSAY EVIDENCE

In Issue Three, Appellant argues the trial court erred in admitting Carreto's hearsay statements to Sergeant Hendricks under the present-sense impression exception to the hearsay rule.   In response, the State does not dispute Appellant's argument regarding the present-sense impression exception, but instead asserts that Appellant has failed to demonstrate that the trial court abused its discretion because the State established that the objected to testimony was admissible as an excited utterance.   Because there is no dispute concerning the inapplicability of the present-sense impression exception, our inquiry is whether the excited-utterance exception applies.   *See* TEX. R. EVID. 803(2).

### *Standard of Review*

We review a trial court's decision to admit evidence over a hearsay objection for an abuse of discretion.   *Zuliani v. State*, 97 S.W.3d 589, 595 (Tex. Crim. App. 2003).   The trial court abuses its discretion when the decision lies outside the zone of reasonable disagreement. *Apolinar v. State*, 155 S.W.3d 184, 186-87 (Tex. Crim. App. 2005) (citing *Cantu v. State*, 842 S.W.2d 667, 682 (Tex. Crim. App. 1992)).   We affirm the trial court's decision if it falls within the zone of reasonable disagreement.   *Moses v. State*, 105 S.W.3d 622, 627 (Tex. Crim. App. 2003).   We will uphold a trial court's ruling admitting or excluding evidence if it is reasonably supported by the record and is correct under any theory of law applicable to the case.   *See Ramos v. State*, 245 S.W.3d 410, 417-18 (Tex. Crim. App. 2008).

9

*Application*

Hearsay is a statement, other than one made by the declarant while testifying at trial, offered into evidence to prove the truth of the matter asserted. TEX. R. EVID. 801(d). It is generally inadmissible unless a statute or the Rules of Evidence provide a specific exception permitting its admission. TEX. R. EVID. 802. One such exception is the excited utterance, which is a statement relating to a startling event or condition made while the declarant was under the stress of excitement caused by an event or condition. TEX. R. EVID. 803(2); *Salazar v. State*, 38 S.W.3d 141, 154 (Tex. Crim. App. 2001). In determining whether a statement falls within the excited-utterance exception, a court must assess whether: (1) the statement was the product of a startling event that produced a state of nervous excitement; (2) the declarant was dominated by the excitement of the event; and (3) the statement related to the circumstances of the startling event. *Jackson v. State*, 110 S.W.3d 626, 633 (Tex. App. – Houston [14th Dist.] 2003, pet. ref'd). The court may also consider other factors such as the amount of time elapsed and whether the statement was in response to a question. *Salazar*, 38 S.W.3d at 154. Most importantly, a court must inquire "whether the declarant was still dominated by the emotions, excitement, fear, or pain of the event." *See King v. State*, 953 S.W.2d 266, 269 (Tex. Crim. App. 1997) (citations omitted).

At the outset of Sergeant Hendricks' testimony, Appellant objected to the hearsay statements made by Carreto to Sergeant Hendricks. After the State took Sergeant Hendricks on *voir dire*, the trial court responded:

> I am not sure that based on what I heard that it was an excited utterance at that point, but I'm going to let it in under present-sense impression, and that's the portion of what occurred that night.

On *voir dire*, Sergeant Hendricks had testified that it took him just a couple of minutes to arrive at the scene from when he first received the 9-1-1 call out. Sergeant Hendricks stated that

10

when he first began to talk to Carreto at the door of the apartment, it was apparent that she had been crying, her eyes were bloodshot, her makeup was smeared, she was still sobbing, her breath was heaving, and her voice was shaky. He observed that Carreto had blood around her mouth and that she quickly invited the officers into the house. Sergeant Hendricks noted that when they interviewed Carreto in the back bedroom, although not hysterical, she was still sobbing, her eyes were still watery, and she was upset. While in that condition, Carreto informed the officers that Appellant had punched her.

Although Carreto's statements were in response to questioning by the officers, based on Sergeant Hendricks' account of the circumstances surrounding her statements, we conclude there is sufficient evidence that Carreto's statements were made while still dominated by the emotion, fear, and pain of the startling event as only a short amount of time had elapsed between the event and the officers' arrival, at the apartment, where Sergeant Hendricks observed Carreto to be visibly upset and that her body bore signs of injury. Accordingly, we find the objected-to statements fall within the excited-utterance exception to the hearsay rule. *See Hudson v. State*, 179 S.W.3d 731, 737 (Tex. App. – Houston [14th Dist.] 2005, no pet.) (statements of complainant who was "visibly shaken and highly upset" when officers arrived five minutes after being dispatched were within the excited-utterance exception to the hearsay rule); *Scugoza v. State*, 949 S.W.2d 360, 362 (Tex. App. – San Antonio 1997, no pet.) (excited-utterance exception applied where complainant was visibly upset, crying, shaking, and afraid). Because the complained-of hearsay fits within the excited-utterance exception to the hearsay rule, the trial court did not err in admitting the statements into evidence. *See Ramos*, 245 S.W.3d at 417-18. Issue Three is overruled.

## SUFFICIENCY OF THE EVIDENCE

In Issue Two, Appellant contends that the evidence is legally insufficient to support his convictions. Specifically, he contends that the evidence was insufficient to permit the jury to logically conclude that he caused bodily injury to Carreto or that he tried to strangle Carreto.

*Standard of Review*

In assessing the legal sufficiency of the evidence to support a criminal conviction, we review all the evidence in the light most favorable to the verdict to determine whether any rational jury could have found the essential elements of the offense beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 318-19, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979); *Brooks v. State*, 323 S.W.3d 893, 895 (Tex. Crim. App. 2010); *Clayton v. State*, 235 S.W.3d 772, 778 (Tex. Crim. App. 2007). The jury is the sole judge of the weight and credibility of the witnesses. *Brooks*, 323 S.W.3d at 899. It is the role of the jury to resolve any conflicts of testimony and to draw rational inferences from the facts. *Hooper v. State*, 214 S.W.3d 9, 13 (Tex. Crim. App. 2007). If the record contains conflicting inferences, we are required to presume the jury resolved such facts in favor of the verdict and defer to that resolution. *Brooks*, 323 S.W.3d at 894-95. On appeal, our role is only to ensure the jury reached a rational verdict, we do not reevaluate the weight and credibility of the evidence produced at trial and we do not substitute our judgment for that of the fact finder. *King v. State*, 29 S.W.3d 556, 562 (Tex. Crim. App. 2000). This standard is the same for both direct and circumstantial evidence. *King v. State*, 895 S.W.2d 701, 703 (Tex. Crim. App. 1995).

*Application*

To prove that Appellant committed assault-family violence by strangulation, the State had to establish beyond a reasonable doubt that Appellant intentionally, knowingly, or recklessly caused bodily injury to Carreto, a member of Appellant's family or household by impeding

Carreto's normal breathing or circulation of the blood by applying pressure to her throat or neck or by blocking her nose or mouth. *See* TEX. PENAL CODE ANN. § 22.01(b)(2)(B) (West 2011). To prove that Appellant committed assault-family violence subject to enhancement, the State was required to establish beyond a reasonable doubt that he intentionally, knowingly, or recklessly caused bodily injury to Carreto, a member of Appellant's family or household and that he had a previous conviction for assault-family violence. *See* TEX. PENAL CODE ANN. § 22.01(b)(2)(A) (West 2011). Bodily injury is defined as "physical pain, illness, or any impairment of physical condition." *See* TEX. PENAL CODE ANN. § 1.07(a)(8) (West 2011). The definition is broad and encompasses even relatively minor physical contacts as long as they consist of more than mere offensive touching. *Lane v. State*, 763 S.W.2d 785, 786 (Tex. Crim. App. 1989) (evidence of bodily injury sufficient when complainant suffered pain and bruise from appellant grabbing her wallet and twisting it away); *see also Bolton v. State*, 619 S.W.2d 166, 167 (Tex. Crim. App. 1981) (evidence of cut sufficient to show bodily injury); *Arzaga v. State*, 86 S.W.3d 767, 778-79 (Tex. App. – El Paso 2002, no pet.) (evidence of swelling and bruising of lips sufficient to show bodily injury).

Appellant argues that the State's evidence was insufficient and did nothing more than create a suspicion of guilt. Appellant heavily relies on the fact that, at trial, Carreto recanted the allegations she made against him, testified that she had lied to the police, and wanted to drop the charges. As the trier of fact, the jury was free to believe or disbelieve any part or all of a witness's testimony and reconcile inconsistencies as they saw fit. *Margraves v. State*, 34 S.W.3d 912, 919 (Tex. Crim. App. 2000); *see also Scugoza*, 949 S.W.2d at 362 (the jury was entitled to believe the State's witnesses' version of the events to the exclusion of the defense witnesses' version). Evidently, the jury chose to believe the officers' testimony, the photographs entered into evidence,

and the 9-1-1 tape recordings over Carreto's trial testimony, and Appellant's stipulation to his prior family-violence assault conviction.   We must defer to the jury's credibility determination. *See* TEX. CODE CRIM. PROC. ANN. art. 38.04 (West 1979); *Bowden v. State*, 628 S.W.2d 782, 784 (Tex. Crim. App. 1982) (holding that conflicts in evidence are reconciled by the jury and will not result in reversal as long as there is enough credible testimony to support the verdict).

Viewing all the evidence in the light most favorable to the verdict, we conclude that a rational jury could have reasonably concluded beyond a reasonable doubt that Appellant committed each offense as alleged in the indictment.   *Brooks*, 323 S.W.3d at 895; *King*, 29 S.W.3d at 562.   Therefore, we hold that the evidence is legally sufficient to support Appellant's convictions.   Issue Two is overruled.

## CONCLUSION

Having overruled all of Appellant's issues, we affirm the trial court's judgment.


GUADALUPE RIVERA, Justice

March 27, 2013

Before McClure, C.J., Rivera, J., and Chew, C.J., (Senior)
Chew, C.J., (Senior), sitting by assignment

(Do Not Publish)

14