Thomas SCUGOZA, Appellant,

v.

The STATE of Texas, Appellee.

No. 04–96–00099–CR.

Court of Appeals of Texas,
San Antonio.

June 11, 1997.

William E. Harrison, San Antonio, for Appellant.

Edward F. Shaughnessy, III, Assistant Criminal District Attorney, San Antonio, for Appellee.

Before RICKHOFF, LÓPEZ and ANGELINI, JJ.

## OPINION

ANGELINI, Justice.

Appellant, Thomas Scugoza, was tried by jury and convicted of assault. Punishment was assessed at one year in jail and a $300.00 fine, all fully probated. In three points of error, he contends that the evidence presented at trial is legally and factually insufficient to support his conviction and that the trial court erred in admitting the testimony of a family violence expert. We affirm.

### Factual and Procedural Background

On August 15, 1994, appellant was arrested for assaulting his wife. Victor Louie, the arresting officer, testified that he arrived at the Scugoza home in the early evening of August 15, 1994, in response to a 911 call reporting a family disturbance. He testified that appellant let him into the house and, as he entered, he could see appellant's wife, Laura Scugoza, crying in the background. He stated that appellant displayed hostility and anger toward Laura.

Officer Louie spoke with Laura inside the house, while appellant stayed outside with another officer. Officer Louie testified that Laura was crying, shaking, scared, and afraid as he spoke with her. Laura told the officer that appellant had thrown a glass at her, dragged her into a bedroom, thrown her to the floor, and thrown a set of venetian blinds on top of her. She stated that her hand had hit the corner of a bed as appellant was shaking her. Officer Louie testified that Laura's hand and wrist were visibly bruised. He further testified that he noticed a set of venetian blinds on the floor of a bedroom in the house.

Laura Scugoza testified that she placed a 911 call on the evening of August 15, 1994. She stated that she did not recall exactly what she said to the 911 operator, only that she was scared that she would be harmed.

She remembered the police coming to her home, but she did not recall exactly what she told the officers. Laura testified that she believed that the police report accurately reported what she said; however, she stressed that she has flashback and anxiety attacks resulting from abuse she suffered as a child. She testified that on the evening in question, she was having one of these flashbacks. In her mind, she was being assaulted by her deceased grandfather when she placed the 911 call. Accordingly, everything she told the police related to her grandfather and not to appellant. She stated that Officer Louie must have assumed she was referring to her husband as she was describing the imagined attack.

Laura testified that she did not remember appellant throwing a glass at her, shaking her, or throwing venetian blinds on her. She testified that appellant did not hit, injure, or assault her on the evening in question. She further testified that she did not remember ever having a bruised hand and wrist. She speculated that, if she did have such a bruise, it was probably the result of her pulling the venetian blinds down in an attempt to get away from the imagined attacks of her grandfather.

Eugene Brown, the program services director of the Bexar County Battered Women's Shelter, testified regarding the cycle of family violence. Brown noted that the "honeymoon stage" is a period in the cycle when victims of domestic violence typically attempt to change or alter any legal action they may have taken during a period of abuse in order to appease the batterer and restore peace in the relationship. Brown testified that it is common for a victim of domestic violence to recant or change her original accusations of abuse.

Finally, appellant testified that he came home on the evening of August 15, 1994, and found Laura in an agitated state. She was repeatedly saying, "Get away from me." After she began hitting a set of venetian blinds, he testified that he took the blinds down, placed them on the floor, and went to his bedroom to watch television. Appellant stated that he was familiar with Laura's "episodes" and knew that it was best to leave her

alone when she became upset. He testified that he had no idea that the police had been called until he answered the door and saw them there. Appellant insisted that he did not assault Laura on the night in question.

## Arguments and Authorities

### A. Sufficiency of the Evidence.

In his first and second points of error, appellant contends that the evidence presented at trial is both legally and factually insufficient to support the verdict. In order to secure a conviction for assault, the state must prove that an accused "intentionally, knowingly, or recklessly caused bodily injury to another, including the person's spouse." TEX. PENAL CODE ANN. § 22.01(a)(1) (Vernon 1994). Appellant contends that because both parties to the alleged assault adamantly testified that no assault or injury ever occurred, a conviction for assault cannot stand.

In reviewing a legal insufficiency point, the appellate court must view the entire body of evidence in the light most favorable to the prosecution and determine whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979); *King v. State*, 895 S.W.2d 701, 703 (Tex.Crim.App.1995). In doing so, we are reminded that the jury is the sole trier of fact and may judge the credibility of the witnesses, reconcile conflicts in the testimony, and accept or reject any or all of the evidence on either side. *Chambers v. State*, 805 S.W.2d 459, 461 (Tex.Crim.App.1991). In reviewing a factual sufficiency point, we must view all the evidence without regard to whether the evidence is favorable to the state or the appellant. *See Clewis v. State*, 922 S.W.2d 126, 129 (Tex.Crim.App.1996). We must view all the evidence "without the prism of 'in the light most favorable to the prosecution'." *Id.* at 129. Following such a review, we will reverse only if the verdict is "so contrary to the overwhelming weight of the evidence as to be clearly wrong and unjust." *Id.; De Los Santos v. State*, 918 S.W.2d 565, 569 (Tex.App.—San Antonio 1996, no pet.).

In a jury trial, the jury is the exclusive judge of the facts proved, the credibility of the witnesses and of the weight to be given their testimony. TEX.CODE CRIM.PROC.ANN. art. 38.04 (Vernon 1965). The jury is free to accept or reject any or all of the evidence presented by either party. *Beardsley v. State*, 738 S.W.2d 681, 684 (Tex.Crim.App. 1987); *Skillern v. State*, 890 S.W.2d 849, 879 (Tex.App.—Austin 1994, pet. ref'd). Reconciliation of evidentiary conflicts is solely a function of the trier of fact. *Bowden v. State*, 628 S.W.2d 782, 784 (Tex.Crim.App. 1982); *Nelson v. State*, 905 S.W.2d 63, 64 (Tex.App.—Amarillo 1995, no pet.). Moreover, where contradictory testimony exists, we assume that the discrepancies were resolved in favor of the verdict. *Moreno v. State*, 755 S.W.2d 866, 867 (Tex.Crim.App. 1988).

In the present case, Officer Louie testified that Laura told him appellant had thrown a glass at her, dragged her into the bedroom, shaken her hard enough to cause her to strike her hand on the bed, and thrown venetian blinds on top of her. Officer Louie further testified that he observed a bruise on Laura's hand and wrist, that he saw a set of venetian blinds on the bedroom floor, and that appellant was exhibiting hostility and anger toward Laura when he arrived at the scene. Accordingly, Officer Louie's observations corroborate Laura's initial story.

Officer Louie testified that Laura was visibly upset, crying, shaking, and afraid when he arrived at the scene. He stated that she was still under the stress of the assault as she reported it to him. Laura herself, testified that she was extremely upset and scared when Officer Louie arrived at her home. Therefore, Officer Louie's testimony regarding what Laura told him during his investigation was admissible under the excited utterance exception to the rule against hearsay. TEX.R.CRIM. EVID. 803(2) (establishing exception for statements "relating to a startling event or condition made while the declarant was under the stress of excitement caused by the event or condition").

Laura testified that she could not remember exactly what she told Officer Louie; however, she asserted that Officer Louie's

account of her report to him was probably true. Yet, she insisted that the assault she reported had occurred in her mind, and that appellant had nothing to do with it. Appellant also denied that he had assaulted Laura.

Considering the jury's exclusive right to resolve conflicting testimony and to determine which evidence it chooses to believe in the face of inconsistent testimony, we find that a reasonable jury could have found beyond a reasonable doubt that appellant intentionally, knowingly, or recklessly caused injury to his wife. Appellant's first and second points of error are overruled.

## B. Admission of Expert Testimony.

■ In his third point of error, appellant contends that the trial court erred in admitting the testimony of Eugene Brown, the program services director of the Bexar County Battered Women's Shelter. Appellant argues that Brown's testimony was unfairly prejudicial, irrelevant, and had no probative value. He bases his argument on the fact that Brown admitted he had never been in contact with either appellant or Laura Scugoza. Therefore, according to appellant, his testimony was not relevant to this case.

■ Expert testimony is admissible when scientific, technical, or other specialized knowledge will assist the trier of fact in understanding the evidence or in determining a fact in issue. TEX.R. CRIM. EVID. 702; *Cohn v. State*, 804 S.W.2d 572, 575 (Tex. App.—Houston [14th Dist.] 1991), *aff'd*, 849 S.W.2d 817 (1993). Evidence admissible under Rule 702 may include testimony which compares general or classical behavioral characteristics of a certain type of victim with the specific victim's behavior patterns. *See Duckett v. State*, 797 S.W.2d 906, 917 (Tex.Crim.App.1990) (holding testimony of expert on whether the reaction of complaining child was similar to the reaction of most victims of child abuse helpful to jury in determining if an assault occurred); *Fielder v. State*, 756 S.W.2d 309, 321 (Tex.Crim.App. 1988) (finding expert testimony of appreciable aid to the trier of fact where it explained inconsistency in appellant's behavior consistent with that of typical battered women). The admission of expert testimony is in the sound discretion of the trial court. *Duckett*, 797 S.W.2d at 917.

In the present case, Brown testified regarding the emotional and behavioral patterns typical of spousal abuse and explained why some victims of spousal abuse eventually recant their accusations of abuse. Brown did not purport to have any direct or personal knowledge of the Scugoza family, nor did he express a direct opinion regarding the credibility of Laura's trial testimony. Rather, he testified that the behavior of a hypothetical woman denying her initial accusation of abuse was consistent with the behavior of the typical battered woman. Brown's testimony described the cycle of abuse in family violence situations, a topic with which the average lay person could not be expected to be familiar. Accordingly, it was useful to the jury in discerning Laura's credibility as it helped to explain inconsistencies between Laura's trial testimony and her previous report to Officer Louie. *See Duckett*, 797 S.W.2d at 917.

■ "While expert testimony which decides an ultimate fact for the jury, such as a direct opinion on the truthfulness of a witness, crosses the line and is not admissible under Rule 702, there is a significant distinction between presenting a witness, such as a polygraph operator, to testify that a person is telling the truth, and presenting a witness who can state that the behavior of a [witness] falls within a common pattern." *Zinger v. State*, 899 S.W.2d 423, 432 (Tex.App.—Austin 1995, no pet.) (citing *Yount v. State*, 872 S.W.2d 706, 708 (Tex.Crim.App.1993) and *Duckett*, 797 S.W.2d at 915); *rev'd on other grounds*, 932 S.W.2d 511 (1996). Brown's testimony in this case was both relevant and probative because it consisted of specialized information valuable in assisting the jury in understanding the evidence. Further, Brown's testimony did not cross the line between assisting the jury and attempting to replace the jury as the trier of the facts. Therefore, the trial court did not abuse its discretion in permitting Brown to testify. Appellant's third point of error is overruled.

The judgment of the trial court is affirmed.