NO. 07-11-00036-CR

IN THE COURT OF APPEALS

FOR THE SEVENTH DISTRICT OF TEXAS

AT AMARILLO

PANEL B

JUNE 7, 2012

_____

TONY BREWER, APPELLANT

v.

THE STATE OF TEXAS, APPELLEE

_____

FROM THE 167TH DISTRICT COURT OF TRAVIS COUNTY;

NO. D-1-DC-10-301395; HONORABLE MICHAEL LYNCH, JUDGE

_____

Before QUINN, C.J., and CAMPBELL and HANCOCK, JJ.

**OPINION**

Appellant Tony Brewer appeals from his convictions for aggravated assault with a deadly weapon and the resulting concurrent sentences of thirty-five years of imprisonment. Through one issue, appellant argues the trial court erred in allowing the admission of expert testimony. We will affirm.

Background

Appellant was charged by indictment with two counts of aggravated assault with a deadly weapon.[1] Appellant does not challenge the sufficiency of the evidence to

_____

[1] Tex. Penal Code Ann. § 22.02(a)(2) (West 2012); Tex. Penal Code Ann. § 22.01(a)(1), (a)(2), (b)(2) (West 2012).

support his convictions. We will relate only such evidence as is necessary to an understanding of his appellate issue.

The victim of appellant's assaults was his fiancée. Count I charged appellant with knowingly or intentionally threatening the victim with imminent bodily injury, using or exhibiting a deadly weapon, a knife. Count II charged him with intentionally or knowingly causing bodily injury to the victim, a member of appellant's household with whom he had a dating relationship, by strangling her with his hand and that he used or exhibited a deadly weapon, his hand, in the commission of the assault. The assaults occurred at their apartment on a day in June 2010. The victim testified appellant choked her, and threatened her with a knife. She later told a friend from work about the assaults, but evidence showed she did not call police until four days later. Appellant argued she lied about the assaults, and that she was the aggressor.

During its case-in-chief, the State called Abbey Simpson, a counselor in the family violence section of the victim services division of the Austin Police Department, to testify to the reasons victims of domestic abuse delay reporting the abuse and to explain the three-stage "cycle of violence." On appeal, appellant complains of the admission of her testimony. He argues it was not shown to be sufficiently reliable because it was not based on empirical studies.

Analysis

The admission of expert testimony is reviewed on appeal for an abuse of discretion. *Lagrone v. State,* 942 S.W.2d 602, 616 (Tex.Crim.App. 1997). Expert testimony is admissible if: (1) the expert is qualified and (2) the testimony is relevant

2

and based on a reliable foundation. *Hartman v. State,* 946 S.W.2d 60, 62 (Tex.Crim.App. 1997). Appellant complains here of the reliability of Simpson's testimony. Considering the reliability of proffered expert testimony in a "soft" science field like the social sciences, those based primarily on experience and training rather than a rigorous scientific method, the trial court should inquire: (1) whether the field of expertise is a legitimate one; (2) whether the subject matter of the expert's testimony is within the scope of that field; and (3) whether the expert's testimony properly relies on or utilizes the principles involved in the field. *Russeau v. State,* 171 S.W.3d 871, 883 (Tex.Crim.App. 2005). We give proper deference to the trial court's ruling regarding the reliability of the expert's opinion. *Vela v. State*, 209 S.W.3d 128, 136 (Tex.Crim.App. 2006).

Outside the presence of the jury, counsel engaged in voir dire of Simpson about her training and experience. Her education includes a master's degree in social work from the University of Texas, and her later training includes a five-day conference by the National District Attorneys Association on domestic violence, as well as many other conferences and workshops on family violence, social work and other topics related to her work with the police department. She had then been employed by the police department in her current position for about three years, and previously worked for a year as a hotline telephone operator receiving domestic violence calls. She also had been employed at a home for girls in foster care, and had worked as a volunteer at a local domestic violence shelter. She was then teaching a workshop for health care professionals, teaching them to recognize the signs of domestic violence. She said she had dealt with thousands of family violence victims. She acknowledged she was not aware of scientific studies of the percentages of domestic violence victims who delay

3

reporting abuse as opposed to percentages who report immediately, or percentages who stay with their abuser as opposed to those who leave. Nor did she have such statistics for the cases she handled at the police department.

On appellant's further objection, and after making its own inquiry of the witness about her training and experience in the specific areas to which she would testify, the trial court pared the permitted subjects of her testimony to two: "delayed outcry and the general cycle of violence, including the honeymoon phase, et cetera."

Simpson told the jury of her meeting with the victim of appellant's assaults. She then testified to her experience with such victims, telling the jury at one point that it is "fairly common in my experience" for victims of domestic violence to be hesitant to report abuse because they care for the abuser, don't want the abuser to get in trouble, or fear retribution. She said those attitudes are "fairly common" even among victims who are away from the abuser during the day. She then described for the jury the "cycle of violence," which she described as a "commonly used model for working with victims of domestic violence." She described the first stage as an explicit abusive or violent incident, the second stage as the "honeymoon" stage in which the abuser apologizes or attempts to renew good terms with the victim so she will not leave or report the abuse, and the third stage as "tension building where the . . . victim is walking on egg shells and trying not to have another explosive incident." She gave examples of behavior she has observed in victims in the honeymoon stage, and examples of actions of abusers during the tension-building phase, as reported to her by victims. She finally told the jury that physical violence, or the threat of it, is used by abusers as a tool to influence behavior.

Texas courts have found expert testimony concerning the dynamics of domestic violence admissible under Rule of Evidence 702. *See Dixon v. State,* 244 S.W.3d 472 (Tex.App.—Houston [14h Dist.] 2007, pet. ref'd) (police officer trained and experienced in family violence permitted to testify as expert on behavior of victims of family violence)[2]; *Scugoza v. State,* 949 S.W.2d 360 (Tex.App.—San Antonio 1997, no pet.) (holding admissible similar testimony by program services director of county women's shelter describing cycle of spousal abuse, including "honeymoon stage").[3] *See also Duckett v. State,* 797 S.W.2d 906, 907 (Tex.Crim.App. 1990) (testimony of "dynamics of intrafamily child sexual abuse"); *Fielder v. State,* 756 S.W.2d 309 (Tex.Crim.App. 1988) (battered wife expert testimony supporting self-defense contention).

During her voir dire, Simpson gave an affirmative answer to the trial court's question asking if her testimony on the "cycle of violence" would be "standard in the industry." She thus gave the trial court reason to conclude her testimony would properly utilize "the principles involved in the field." *Rousseau,* 171 S.W.3d at 883. Review of case law and other literature confirms her testimony was consistent with that found to be admissible in similar cases and elsewhere used in her profession. *See Dixon,* 244 S.W.3d at 480; *Scugoza,* 949 S.W.2d at 363; Krieger, Sarah, Note, *The Dangers of Mediation in Domestic Violence Cases,* 8 CARDOZO WOMEN'S L.J., 235, 238 (2002) (discussing three phases of domestic violence cycle: (1) tension building, (2) acute

---

[2] *See also Dixon*, 244 S.W.3d at 489 (Frost, J., concurring) (discussing expert testimony on dynamics of domestic violence).

[3] *But see Gonzales v. State*, No. 03-07-00323-CR, 2008 Tex. App. LEXIS 5214 (Tex.App.—Austin July 10, 2008, pet. ref'd) (mem. op., not designated for publication) (finding error to admit similar testimony by police officer regarding cycle of abuse over defendant's Rule 403 objection).

explosion, and (3) the honeymoon).  As noted, her testimony also was illustrated with examples from her own experience.

Given the nature of her field of expertise, Simpson's inability to cite empirical studies or data did not render her testimony unreliable.  *See Rousseau,* 171 S.W.3d at 883.  The trial court carefully and properly limited Simpson's testimony to comport with her expertise.  We see no abuse of discretion in its admission of her expert testimony regarding delayed reporting and the "cycle of violence" in family violence cases, to assist the jury to understand the victim's delay in calling police.  *See Vela,* 209 S.W.3d at 136.  We overrule appellant's sole issue on appeal and affirm the judgments of the trial court.

James T. Campbell
Justice

Publish.