

# COURT OF APPEALS
## SECOND DISTRICT OF TEXAS
## FORT WORTH

### NO. 02-15-00400-CR

---

JOHN ALLEN LESSNER

APPELLANT

V.

THE STATE OF TEXAS

STATE

----------

FROM THE COUNTY COURT AT LAW OF HOOD COUNTY
TRIAL COURT NO. 47971

----------

## MEMORANDUM OPINION[1]

----------

John Lessner appeals his conviction by a jury for misdemeanor assault. *See* Tex. Penal Code Ann. § 22.01(a)(1) (West Supp. 2016).[2] In his sole point, appellant contends the trial court abused its discretion by admitting the expert

---

[1]*See* Tex. R. App. P. 47.4.

[2]The jury also assessed his punishment at 365 days' confinement and a $4,000 fine.

testimony of Jerri Vaughn about family violence in general and typical behaviors of victims of family violence because the testimony was not relevant and was unfairly prejudicial. We affirm.

## Background

At trial, the complainant testified that on March 22, 2015, during the course of an argument[3] at the house she had been living in with appellant, appellant grabbed her by the hair and wrist, "slammed" her to the floor and used her body to wipe up spilled tea, grabbed her by the face and "slung" her against the refrigerator, and—while pinning her against the refrigerator with his forearm—bit her on the cheek, nose, and chin, leaving visible bite marks. At some point during the struggle, the complainant was able to call 911 using a panic button on the phone. But when the police arrived, she told an officer that nothing had happened and that she did not want to press charges. The complainant testified that she was afraid to get appellant in trouble and felt panic at the thought that he would get angry. Nevertheless, after speaking with the complainant and appellant, and observing the bruises and swelling on the complainant's face, the police decided to arrest appellant.

The complainant refused to complete a written statement for the police, but she did request an emergency protective order and allowed an officer to take

---

[3]Appellant and the complainant were living in his parents' house; he got angry with the complainant for spilling tea "all over" the kitchen floor and "disrespecting" his parents' house.

photographs of bruising on her arms and face. She also drove herself to the hospital where she told hospital staff that appellant had assaulted her. The complainant allowed police to take additional photographs of her injuries the next morning and four days later.

After appellant was charged with assault, the complainant signed two affidavits of nonprosecution. At trial, she testified that she had lied in at least one of the affidavits because of fear that appellant would "get in trouble." In addition, she sought to vacate the protective order, also "to protect [appellant]."

On cross-examination, appellant's counsel questioned the complainant about her affidavits of nonprosecution, her wavering willingness to testify, her differing versions of events over the course of the case, and the fact that she had willingly engaged in sadomasochistic activities with appellant in the past and enjoyed "rough sex," with her as the submissive partner. The complainant also testified that as part of that rough sex, appellant often bit her, particularly on the thighs, arms, and ears, but he never bit her face.

After the complainant testified, over appellant's rule 702 and 403 objections,[4] the trial court admitted the expert testimony of State's witness Jerri Vaughn about the dynamics of family violence and typical behavior of domestic violence victims in relation to their abusers. Tex. R. Evid. 403, 702. More

---

[4]Appellant also objected that Vaughn was not qualified to testify as an expert and that her testimony was not reliable. On appeal, appellant's challenge to the admissibility of Vaughn's testimony is limited to relevance and whether the evidence should have been excluded under rule 403.

3

specifically, Vaughn, a licensed master social worker and executive director of the Family Crisis Center in Johnson County, testified that victims of family violence often are reluctant to report their experiences for many reasons, including fear of economic consequences. Vaughn testified that it is "fairly common" for victims of domestic violence to sign affidavits of nonprosecution out of fear, denial, and hope that the abuser will change. She also said that it is common for victims to minimize the abuse they have suffered due to shame, embarrassment, and denial. According to Vaughn, abusers often control the finances in a relationship, and "[f]amily violence is all about power and control [with] . . . the ultimate goal . . . to keep [the victim] in th[e] relationship where they have all the power."

## Admissibility of Vaughn's Testimony

A trial court's determination as to the admissibility of expert testimony is governed by an abuse of discretion standard. *Montgomery v. State*, 810 S.W.2d 372, 391 (Tex. Crim. App. 1991) (op. on reh'g). An appellate court must affirm a trial court's ruling if it was at least within the "zone of reasonable disagreement." *Id.* We consider the ruling in light of what was before the trial court at the time it made the ruling. *Billodeau v. State*, 277 S.W.3d 34, 39 (Tex. Crim. App. 2009).

Admissibility of expert testimony is governed by rule 702 of the Texas Rules of Evidence, which states,

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if the expert's scientific, technical, or other

4

specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue.

Tex. R. Evid. 702; *Tillman v. State*, 354 S.W.3d 425, 435 (Tex. Crim. App. 2011). The threshold determination is whether the proponent of the expert testimony proved by clear and convincing evidence that the testimony is "sufficiently reliable and relevant to help the jury" in understanding the evidence or determining an issue of fact. *Tillman*, 354 S.W.3d at 435 (citing *Kelly v. State*, 824 S.W.2d 568, 572 (Tex. Crim. App. 1992)). Expert testimony is relevant or "fit[s]" the case if it assists the trier of fact and is sufficiently tied to the facts of the case. *Id.* at 438; *Jordan v. State*, 928 S.W.2d 550, 555 (Tex. Crim. App. 1996); *see* Tex. R. Evid. 702.

"Evidence admissible under rule 702 may include testimony which compares general or classical behavioral characteristics of a certain type of victim with the specific victim's behavior patterns." *Scugoza v. State*, 949 S.W.2d 360, 363 (Tex. App.—San Antonio 1997, no pet.) (citing *Duckett v. State*, 797 S.W.2d 906, 917 (Tex. Crim. App. 1990) (holding that expert's testimony comparing reaction of complaining child with general behavioral characteristics of abused children helped jury in determining whether assault occurred);[5] *Fielder v. State*, 756 S.W.2d 309, 321 (Tex. Crim. App. 1988) (holding same as to female

---

[5]The court of criminal appeals has disapproved of *Duckett*, but only to the extent that it could be read "to hold that even expert testimony that is relevant as substantive evidence may yet be inadmissible unless it serves some rehabilitative function." *Cohn v. State*, 849 S.W.2d 817, 819 (Tex. Crim. App. 1993).

5

victims of domestic violence)); *see Brewer v. State*, 370 S.W.3d 471, 474 (Tex. App.—Amarillo 2012, no pet.). Because the average juror will not typically be familiar with the effect of family violence on victims and the dynamics of the relationship between abuser and victim, expert testimony has generally been held to be admissible to explain recantations, delays in reporting, lies to the police, and why a complainant would continue living with a family member after an alleged assault. *See Salinas v. State*, 426 S.W.3d 318, 323 (Tex. App.—Houston [14th Dist.] 2014) (op. on reh'g), *rev'd on unrelated grounds*, 464 S.W.3d 363 (Tex. Crim. App. 2015); *Dixon v. State*, 244 S.W.3d 472, 480 (Tex. App.—Houston [14th Dist.] 2007, pet. ref'd); *Scugoza*, 949 S.W.2d at 363; *see also Mendoza v. State*, No. 08-13-00293-CR, 2015 WL 5999596, at *2, *4–5 (Tex. App.—El Paso Oct. 14, 2015, pet. ref'd) (not designated for publication) (holding testimony regarding cycle of family violence relevant when assault was witnessed by third party but victim refused to cooperate with police and testified for defense); *Capello v. State*, No. 03-05-00553-CR, 2006 WL 2453021, at *4 (Tex. App.—Austin Aug. 25, 2006, pet. ref'd) (mem. op., not designated for publication) (determining that expert testimony on cycle of abuse was relevant because it assisted jury in understanding why victim of domestic violence might lie to police).

Appellant acknowledges that such evidence can be admissible but nevertheless argues that the admissibility of such evidence is limited to only those cases in which the opponent of the evidence or the evidence itself raises a

6

material issue requiring such explanation and that no material issue was raised here. We need not decide the issue as framed by appellant because the evidence was relevant to a material issue raised by the evidence in the case. Appellant's counsel told the jury in his opening statement that the complainant had told numerous versions of the events of March 22, 2015, that she had put in writing her desire to drop the charges, and that she has "zero" credibility. According to appellant's counsel, he and the complainant had merely engaged in consensual "rough sex" on March 22, 2015, and she thereafter leveraged the threat of charges to extort him and his family for money. Additionally, appellant cross-examined the complainant extensively regarding the affidavits of nonprosecution, her wavering willingness to testify, her extensive cooperation with the defense, and her different versions of events. Accordingly, the complainant's inconsistent behavior was clearly raised by the evidence, and Vaughn's testimony explaining why a victim of domestic violence would report an assault but then refuse to press charges, sign affidavits of nonprosecution, and cooperate extensively with the defense was relevant to provide another possible explanation of that behavior. *See Dixon*, 244 S.W.3d at 480; *Capello*, 2006 WL 2453021, at *4.

Appellant contends that even if Vaughn's testimony was relevant, it was nevertheless inadmissible under rule 403. Under rule 403, a court may exclude relevant evidence if its probative value is substantially outweighed by a danger of unfair prejudice, confusion of the issues, the jury's being misled, undue delay, or

the needless presentation of cumulative evidence. Tex. R. Evid. 403; *Gigliobianco v. State*, 210 S.W.3d 637, 640–41 (Tex. Crim. App. 2006) ("Relevant evidence may be excluded if its probative value is not worth the problems that its admission may cause. The issue is whether the search for truth will be helped or hindered by the interjection of distracting, confusing, or emotionally charged evidence." (quoting J. McLaughlin et al., *Weinstein's Federal Evidence* § 403.02[1][a] at 403–6 (2006 rev.)).

In deciding whether to admit evidence over a rule 403 objection, a trial court

> must balance (1) the inherent probative force of the proffered item of evidence along with (2) the proponent's need for that evidence against (3) any tendency of the evidence to suggest decision on an improper basis, (4) any tendency of the evidence to confuse or distract the jury from the main issues, (5) any tendency of the evidence to be given undue weight by a jury that has not been equipped to evaluate the probative force of the evidence, and (6) the likelihood that presentation of the evidence will consume an inordinate amount of time or merely repeat evidence already admitted.

*Id.* at 641–42. We review the trial court's decision for an abuse of discretion. *Id.* at 642–43.

Vaughn's expert testimony was probative to explain behavioral characteristics of victims of family violence, generally, and the complainant's behavioral patterns by comparison. For the reasons stated above and similar to those cited in *Scugoza*, Vaughn's testimony helped explain why someone who had been a victim of family violence would report an assault but later sign an

8

affidavit of nonprosecution,[6] waver in deciding to testify,[7] tell different versions of what happened to different people, and cooperate extensively with the defense. 949 S.W.2d at 363. Appellant's argument that Vaughn did not research this particular case, its facts, or have any interaction with or knowledge of the complainant or appellant detracts little, if any, from the evidence's probative value. *See id.* at 361, 363; *see also* Tex. R. Evid. 703; *Mendoza*, 2015 WL 5999596, at *4 (noting that expert is not required to interview witnesses or conduct an investigation of the facts for expert's testimony to be admissible).

Appellant argues that Vaughn's testimony was unduly prejudicial because it could have led the jury to believe that he had committed extraneous acts of violence against the complainant or that he had engaged in the types of controlling behavior that Vaughn had described, thus influencing the jury to convict him for being an abuser in general. Here, Vaughn's description of the cycle of violence, traumatic bonding, victim behavioral characteristics, and subsequent opinion finding similarity with the complainant's behavioral patterns

---

[6]Vaughn testified that this practice is "fairly common" at her shelter and typically results from (1) aggressor intimidation by the aggressor himself, his family members, or someone else, (2) fear of financial or livelihood instability, (3) a hope that the aggressor changes, and (4) denial or minimization of abuse and a lack of control.

[7]Vaughn testified victims may commonly hesitate to testify because they still value the relationship or they have experienced "traumatic bonding," in which victims irrationally identify with a perpetrator who is providing economic and emotional sustenance. Alternatively, Vaughn stated victims may waver due to brain trauma-induced swings in mood or focus.

9

naturally assumes the presence of abuse, but it does not suggest a decision on an irrational basis beyond that of the underlying assault. *See Duckett*, 797 S.W.2d at 913 (noting child sexual abuse accommodation syndrome evidence assumes the presence of abuse but properly explains sexually abused child's reactions to it). And although Vaughn's testimony tends to make the complainant's testimony more plausible, it is well-settled that we should not exclude otherwise admissible substantive evidence for mere injury to an appellant's case. *See Pawlak v. State*, 420 S.W.3d 807, 811 (Tex. Crim. App. 2013) (noting that rule 403 excludes only unfairly prejudicial evidence because "all evidence against a defendant is, by its very nature, designed to be prejudicial").

Moreover, other evidence suggested that a history of domestic violence did exist and that the complainant's and appellant's relationship shared some of the typical relationship characteristics about which Vaughn testified. From October 2014 through March 2015, the complainant was not employed. She often went with appellant during the day while he worked in his landscaping business. The complainant and appellant lived in appellant's father's and stepmother's home and did not pay rent. Appellant was allowed to use his parents' truck, but the complainant was not. Although the complainant testified that she received monthly checks from her father's estate during that time, she had no car and no cash saved.

10

The complainant testified that she referred to appellant's father as "Big Papa." According to the complainant, as the police were arresting appellant and he walked past her, he told her to "[c]all Big Papa and tell him our[8] truth," which she said meant "[t]o say it was all sex." She also said, "That's what I always told my family." When the complainant contacted appellant's father before going to the hospital, he suggested that she contact the arraignment judge. So after leaving the hospital, she waited five hours in the parking lot of the Hood County Jail until the arraignment judge arrived. She tried to prevent the judge from signing an emergency protective order, but the judge would not consider her request. In explaining why she went to see the arraignment judge, the complainant explained that she "was just trying to right my wrongs," which meant that she "had to make it right" and that appellant "couldn't get in trouble." She further stated, "[Appellant] *always* told me to right my wrongs."[9] [Emphasis added.]

The complainant testified that appellant's attorney called the day after appellant's arrest and told her that she could sign an affidavit of nonprosecution. As the complainant was leaving for the attorney's office, appellant's stepmother

---

[8]The jury could have reasonably inferred that "our truth" was different from "the truth." *See, e.g.*, *Temple v. State*, 390 S.W.3d 341, 360 (Tex. Crim. App. 2013).

[9]The complainant admitted whispering, "Don't let him go," during a meeting at the prosecutor's office because she "couldn't right this wrong, . . . and he was going to be mad. He was going to be mad because I couldn't get this one right."

drove up, so the stepmother drove the complainant. The complainant testified that she lied in the affidavit so that appellant would not "get in trouble" because he was "all [she] had": "He protected me. I had to protect him." In reference to her statement in the affidavit that nothing had happened, she testified, while crying, "And I did our truth: It was rough sex. I did. I did. I tried." The complainant also signed the second affidavit of nonprosecution at appellant's attorney's office.

Finally, after appellant was arrested and the complainant returned to his parents' house, appellant's parents told her that she had to move out in four days. The complainant had already told them that she was not going to fight them because she knew that appellant would "come home," so she would go somewhere else instead. The police took her to a safe house.

Thus, there was evidence before the trial court that the complainant was financially dependent on appellant and his parents—consistent with a typical victim's motive to recant—that appellant appeared to be in a position of power and control in the relationship, both economically and sexually, and that the complainant was afraid of what would happen after she called the police and appellant was arrested. Vaughn's general testimony—which she made clear was not based upon any knowledge of the complainant or the relationship between appellant and the complainant—was no more likely to suggest that appellant was an abuser in general than this specific testimony of the complainant.

Appellant's reliance on the analysis in *Gonzalez v. State*, No. 03-07-00323-CR, 2008 WL 2736889 (Tex. App.—Austin July 10, 2008, pet. ref'd) (mem. op., not designated for publication), is misplaced. In that case, the evidence showed that Gonzalez, who was married to but separated from the complainant, took her to a motel against her will and forced her inside after the complainant had met him to discuss their income tax refund. *Id.* at *1. The complainant cried out to a maid who was standing nearby. *Id.* The maid notified the front desk attendant, who called the room; when Gonzalez answered and said he and his wife were having marital difficulty and everything was fine, the motel staff accepted his answer and did not take any other action. *Id.* After Gonzalez threw the complainant on the bed and tried to gag her, she became afraid; after initially refusing his requests for sex, she finally agreed because she was afraid she "wouldn't walk out of that room alive" if she did not. *Id.* at *2. Afterward, the complainant accompanied Gonzalez to a restaurant, where she called her divorce attorney and 911 from the restroom. *Id.* Gonzalez was charged with and convicted of aggravated kidnapping and aggravated sexual assault. *Id.* at *1.

Over Gonzalez's rule 403 objection, the trial court admitted testimony from a San Marcos police officer about the cycle of domestic violence and why a victim would return to an abuser or keep the abuse secret. *Id.* at *4–5. The trial court also allowed the officer to testify about an unrelated investigation in which she had been involved; in that case, the wife had been abused and sexually

assaulted by her husband for years but did not call the police until the husband strangled her and she lost consciousness. *Id.* at *5. The State contended that the evidence rebutted the defense's theory that the entire encounter with the complainant was consensual as supported by the evidence that she did not cry out or try to get help when they were leaving the motel and that no one heard any unusual noises from outside the motel room during the alleged assault. *Id.*

The Austin court of appeals held that the evidence was inadmissible under rule 403. *Id.* The court concluded that the testimony had very little probative value because no evidence showed (1) that the complainant had displayed the typical characteristics of an abused spouse that had been described by the officer, (2) that the complainant delayed in making an outcry, or (3) that the complainant's version of events was inconsistent. *Id.* Moreover, the same evidence failed to explain why the complainant would have cried out when she and Gonzalez were entering the room but not when they were leaving. *Id.* The court thus concluded that the slight probative value of the evidence was substantially outweighed by the danger of raising a suspicion in the jurors' minds that Gonzalez had abused the complainant in the past. *Id.*

*Gonzalez* is thus distinguishable from this case, in which the expert's testimony was relevant and other evidence tended to show that appellant had assaulted the complainant in the past. We therefore conclude that the probative value of the evidence was not substantially outweighed by the possibility of unfair prejudice derived from an inference that appellant had engaged in abusive

14

conduct described beyond the offense for which he was on trial. Accordingly, the trial court did not abuse its discretion by admitting Vaughn's expert testimony under rule 403. *See Cohn v. State*, 849 S.W.2d 817, 820–21 (Tex. Crim. App. 1993).

Because the trial court did not abuse its discretion by admitting the evidence over appellant's rule 403 and 702 objections, we overrule appellant's point.

## Conclusion

Having overruled appellant's sole point, we affirm the trial court's judgment.

PER CURIAM

PANEL: LIVINGSTON, C.J.; DAUPHINOT and SUDDERTH, JJ.

DAUPHINOT, J., dissents without opinion.

DO NOT PUBLISH
Tex. R. App. P. 47.2(b)

DELIVERED: August 25, 2016