

# In The
# Court of Appeals
# Sixth Appellate District of Texas at Texarkana

No. 06-16-00191-CR

BOBBY ALLEN RUSSELL, Appellant

V.

THE STATE OF TEXAS, Appellee

On Appeal from the 188th District Court
Gregg County, Texas
Trial Court No. 44,918-A

Before Morriss, C.J., Moseley and Burgess, JJ.
Memorandum Opinion by Justice Moseley

MEMORANDUM OPINION

A Gregg County jury convicted Bobby Allen Russell of continuous violence against the family, and he was sentenced to five years' confinement and assessed a fine of $5,000.

On appeal, Russell argues (1) that the trial court erred by denying his motion to quash the indictment and (2) that the trial court erred in allowing the State's expert on family violence to testify.

We affirm the trial court's judgment because the trial court acted within its discretion in denying Russell's motion to quash and in admitting the expert testimony.

I.    **Factual Background**

In Gregg County, Texas, Russell was indicted for the offense of continuous violence against the family under Section 25.11(a) of the Texas Penal Code.  The indictment alleged that on May 25, 2015, and July 9, 2015, Russell committed family violence assault against Wendy Carter.

A trial, Wendy testified that on May 25, 2015, she and her two children, sixteen-year-old John Carter and eleven-year-old Grace Carter, were watching television in the guest bedroom of her home when her live-in boyfriend, Russell, arrived.  Wendy knew from his text messages that he was angry and had been drinking, and she heard him "kicking the back door trying to get it open."  Wendy closed the bedroom door and met Russell in the hallway.  He was yelling and cursing at her, and she could tell that he was "very intoxicated."  He grabbed her by the neck and threw her up against the wall.  When the children opened the bedroom door, she told them to "stay in there."  He held her by the throat and twice choked her to the point that she lost consciousness.

2

When Wendy regained consciousness from the second choking, Russell had left the scene. She and her children waited in an upstairs bedroom for the police to arrive, and after speaking with the police, Wendy went to the emergency room at Good Shepherd Medical Center. As a result of the assault, she suffered a broken arm, a concussion, several bruises, and marks on her throat.

John testified that when Russell entered the house, his mother looked scared. He and Grace heard yelling and Russell cursing. Neither John nor Grace saw the assault take place; however, John heard a loud "boom on the wall" that he believed to have been caused by Russell pushing his mother against the wall. During the assault on his mother, John took Grace and ran to an upstairs bedroom. He put Grace in the closet because he did not want her to get hurt. John was scared, so he got out his hunting rifle and called his father, Wendy's ex-husband, Dean Carter, who called the police. After the assault, John and the rest of the family spent the night elsewhere with family and friends, and when Wendy returned to the home late the next day, all of Russell's things had been removed from the dwelling. After the day of the assault, Russell no longer lived with Wendy, but he continued to appear at the home sporadically in the late hours of the night, although Wendy was then attempting to have a protective order issued to prohibit him from coming to her home.

Several weeks later, on July 9, 2015, Wendy was at home with Jeff Burnett, a man she met online. Burnett testified that after he had been there for about fifteen minutes, Russell appeared and it seemed apparent to him that Russell had been drinking "[v]ery heavily." Russell began to curse Wendy and to ask her what was going on and inquire about the identity of each person in the house and where they were. Russell was visibly angry and told Burnett that the residence was his house and that Wendy was his wife. Russell grabbed Wendy's arms and shoved her against a wall

3

and started pushing Burnett, telling him to leave. With Russell's attention on Burnett, Wendy quickly hid and called 9-1-1. However, when the police arrived, they arrested Wendy on an outstanding warrant but did not arrest Russell. A few days after this more recent assault, Wendy still had bruises on her arms.

Kirk Haddix, a lieutenant in the Criminal Investigations Division of the Gregg County Sheriff's Office, testified that he was familiar with Russell because he had three family violence assault cases regarding Russell. The dates of the assaults were May 8, May 25, and July 9, 2015. Wendy testified that after she came home on the night of May 8, 2015, Russell ripped her shirt off and broke her arm, but she did not call the police. Russell apologized and said that it would never happen again. She and Russell went to the hospital the next day, but because Russell was with her, she failed to reveal the assault but told the hospital staff that she had fallen. After the assault, Russell continued to live at Wendy's house.

Near the conclusion of the State's case, Russell objected to the testimony of Lyndell McAllister, saying that her testimony would be more prejudicial than probative and that it was no more than an attempt to bolster testimony. The trial court temporarily halted the proceedings and conducted a hearing outside the presence of the jury. This included a voir-dire examination of the proposed witness and, after the hearing, the trial court allowed the expert testimony of McAllister about the dynamics of family violence and typical behavior of domestic violence victims in relation to their abusers. *See* TEX. R. EVID. 403, 703. McAllister, a licensed master social worker with a concentration and specialization in child welfare, had an extensive history of high-level work with various family-violence-related organizations in East Texas. At the time of trial, she

4

worked for the City of Longview in the "Partners in Prevention" program, and having helped write the curriculum, had taught a class for twenty years for the Parent Resource Center of East Texas, a course for people that have been arrested for family violence and their significant others.

McAllister described domestic violence as a cycle where there is a tension-building phase, an explosive phase, and a honeymoon phase. She explained that the general public is not well-informed regarding domestic violence and that it is common for people to fail to understand why the victim returns to the battering relationship; even so, victims often feel as if they cannot leave because they are emotionally and financially dependent on the batterer.[1] She testified that the victims of family violence often minimize or refuse to speak of the abuse they have suffered because of shame and guilt and that when they do tell others about being the victim of family violence, they are not always believed.

Russell called only one witness, Wendy's friend, Cristi Parsons, who testified that on the night of May 8, 2015, Wendy was intoxicated and that when Russell confronted her, he was direct, but was not yelling or screaming. Between the night of May 8 and May 25, Parsons saw no bruises on Wendy's face. Although she saw no marks on Wendy on the night of May 25, she did feel a bump on Wendy's head.

The jury found Russell guilty of continuous violence against the family. Russell was sentenced to five years in prison and assessed a $5,000 fine. Russell appealed, contesting the indictment and the State's expert witness.

---

[1]McAllister's testimony before the jury was substantially similar to her testimony on voir dire.

**II.    The Trial Court Acted Within its Discretion in Denying Russell's Motion to Quash**

As best we can discern from Russell's brief, in his first point of error, Russell contends that the amended indictment contained a "fatal defect of substance" and that the trial court erred in denying his motion to quash[2] because the allegation that Russell impeded the normal breath or circulation of Wendy's blood "is outside the scope" of the statutory definition of continuous family violence.

Since the sufficiency of a charging instrument presents a question of law, we review de novo a trial court's decision denying a motion to quash an indictment. *State v. Barbernell*, 257 S.W.3d 248, 251–52 (Tex. Crim. App. 2008); *Lawrence v. State*, 240 S.W.3d 912, 915 (Tex. Crim. App. 2007); *Tollett v. State*, 219 S.W.3d 593, 596 (Tex. App.—Texarkana 2007, pet. struck).  A person commits the offense of continuous violence against the family if, "during a period that is 12 months or less in duration, the person two or more times" commits an assault, as defined under Section 22.01(a)(1), against a family member.[3]  TEX. PENAL CODE ANN. § 25.11(a) (West 2011).

The amended indictment alleges, in pertinent part, that on or about May 25, 2015, Russell did then and there:

> intentionally, knowingly, or recklessly cause bodily injury to Wendy Carter, a member of the said Defendant's family and household and with whom the said Defendant has had a dating relationship, as described by Chapter 71, Family Code, by striking and pushing Wendy Carter with the hand of the Defendant and *by*

---

[2]Russell moved to quash the original indictment arguing improper joinder under Article 21.21 of the Texas Code of Criminal Procedure, and the State responded with a motion to amend the indictment.  After a hearing, the trial court denied Russell's motion and granted the State's motion to amend.  Raising new grounds, Russell subsequently filed a motion to quash the amended indictment, which the trial court denied.  Here, Russell appeals from the trial court's denial of his motion to quash the amended indictment.

[3]All those described by Sections 71.0021(b), 71.003, 71.005 of the Texas Family Code are family members for purposes of continuous violence against the family.  TEX. PENAL CODE ANN. § 25.11(a).

6

> *impeding the normal breath or circulation of the blood of the said Wendy Carter*
> *by applying pressure to the throat or neck and by blocking the nose or mouth of the*
> *said Wendy Carter* and on or about the 9th day of July, 2015, the Defendant did
> then and there intentionally, knowingly, or recklessly cause bodily injury to Wendy
> Carter, a member of the said Defendant's family and household and with whom the
> said Defendant has had a dating relationship, as described by Chapter 71, Family
> Code, by pushing and grabbing Wendy Carter with the hand of the Defendant, and
> said conduct by the Defendant occurred during a period that was 12 months or less
> in duration.

(Emphasis added). Russell argues that "the impeding language is conduct that is prohibited by §22.01(b)(2)(B), not §22.01(a)(1)" and is, therefore, "outside the scope of §22.01(a)(1)" for purposes of continuous violence against the family. We disagree.

Ordinarily, under Section 22.01(a)(1), assault is a Class A misdemeanor and occurs when one "intentionally, knowingly, or recklessly causes bodily injury to another, including the person's spouse." TEX. PENAL CODE ANN. § 22.01(a)(1), (b) (West Supp. 2016). However, subsection (b)(2)(B) clearly states that "[a]n offense under Subsection (a)(1) . . . is a felony of the third degree if the offense is committed against" a family member[4] "by intentionally, knowingly, or recklessly impeding the normal breathing or circulation of the blood of the person by applying pressure to the person's throat or neck or by blocking the person's nose or mouth." TEX. PENAL CODE ANN. § 22.01(b)(2)(B). Therefore, by definition, an offense under Section 22.01(b)(2)(B) is an assault under Section 22.01(a)(1). *See* TEX. PENAL CODE ANN. § 22.01(a)(1), (b)(2)(B). Accordingly, we overrule this point of error.

---

[4]*See* TEX. FAM. CODE ANN. § 71.0021(b) (West Supp. 2016), §§ 71.003, 71.005 (West 2011).

**III.    The Trial Court Did Not Err in Admitting the Expert's Testimony**

In his second and final point of error, Russell contends that the testimony of McAllister was inadmissible under Rule 403 of the Texas Rules of Evidence because its probative value was substantially outweighed by the danger of unfair prejudice.[5]

Pursuant to Rule 403, a court may exclude relevant evidence if its probative value is substantially outweighed by a danger of unfair prejudice, if it could cause the issues to be confused, if it can be the cause of misleading the jury, or if it needlessly cumulates evidence.  TEX. R. EVID. 403; *Gigliobianco v. State*, 210 S.W.3d 637, 640–41 (Tex. Crim. App. 2006) ("Relevant evidence may be excluded if its probative value is not worth the problems that its admission may cause. The issue is whether the search for truth will be helped or hindered by the interjection of distracting, confusing, or emotionally charged evidence." (quoting J. McLaughlin, et al., *Weinstein's Federal Evidence* § 403.02[1][a] at 403–6 (2006 rev.)).  In deciding whether to admit evidence over a Rule 403 objection, a trial court

> must balance (1) the inherent probative force of the proffered item of evidence along with (2) the proponent's need for that evidence against (3) any tendency of the evidence to suggest decision on an improper basis, (4) any tendency of the evidence to confuse or distract the jury from the main issues, (5) any tendency of the evidence to be given undue weight by a jury that has not been equipped to evaluate the probative force of the evidence, and (6) the likelihood that presentation

---

[5]Though Russell's argument is confusing and multifarious, we choose to address it in the interest of justice.  *See Harris v. State*, 133 S.W.3d 760, 764 n.3 (Tex. App.—Texarkana 2004, pet. ref'd).

8

of the evidence will consume an inordinate amount of time or merely repeat evidence already admitted.

*Gigliobianco*, 210 S.W.3d at 641–42. We review the trial court's decision for an abuse of discretion.[6] *Id*. at 642–43.

Here, McAllister's expert testimony was probative of general behavioral characteristics of abusers and victims of family violence and compared that to the behavior of Russell and Wendy. *Scugoza v. State*, 949 S.W.2d 360, 363 (Tex. App.—San Antonio 1997, no pet.) (citing *Duckett v. State*, 797 S.W.2d 906, 917 (Tex. Crim. App. 1990)[7] (holding that expert's testimony comparing reaction of complaining child with general behavioral characteristics of abused children helped jury in determining whether assault occurred); *Fielder v. State*, 756 S.W.2d 309, 321 (Tex. Crim. App. 1988) (holding same as to female victims of domestic violence)); *see Brewer v. State*, 370 S.W.3d 471, 474 (Tex. App.—Amarillo 2012, no pet.). Because the average juror will not typically be familiar with the effect of family violence on victims and the dynamics of the relationship between abuser and victim, expert testimony has generally been held to be admissible and useful to explain recantations, delays in reporting, lies to the police or medical personnel, and why a complainant would continue living with an abuser after an alleged assault. *See Salinas v. State*, 426 S.W.3d 318, 323 (Tex. App.—Houston [14th Dist.] 2014) (op. on reh'g), *rev'd on other*

---

[6]A trial court's determination as to the admissibility of expert testimony is governed by an abuse of discretion standard. *Montgomery v. State*, 810 S.W.2d 372, 391 (Tex. Crim. App. 1990) (op. on reh'g). An appellate court must affirm a trial court's ruling if it was at least within the "zone of reasonable disagreement." *Id*. We consider the ruling in light of what was before the trial court at the time it made the ruling. *Billodeau v. State*, 277 S.W.3d 34, 39 (Tex. Crim. App. 2009).

[7]The court of criminal appeals has disapproved of *Duckett*, but only to the extent that it could be read "to hold that even expert testimony that is relevant as substantive evidence may yet be inadmissible unless it serves some rehabilitative function." *Cohn v. State*, 849 S.W.2d 817, 819 (Tex. Crim. App. 1993).

*grounds*, 464 S.W.3d 363 (Tex. Crim. App. 2015); *Dixon v. State*, 244 S.W.3d 472, 480 (Tex. App.—Houston [14th Dist.] 2007, pet. ref'd); *Scugoza*, 949 S.W.2d at 363. McAllister's testimony helped explain why someone who had been a victim of family violence might continue seeing their attacker, fail to report an assault, and lie to the police or hospital staff. *Scugoza*, 949 S.W.2d at 363. McAllister admitted that her testimony was not based upon any knowledge of Russell or the relationship between Russell and Wendy, but that detracts little, if any, from the evidence's probative value. Further, the general nature of the testimony offers little chance of distracting the jury from the main issues. *See id.* at 361, 363; *see also* TEX. R. EVID. 403, 703.

Russell contends that McAllister's testimony "fit the case specific material she reviewed into the pattern of family violence she had seen over her career," possibly leading the jury to believe that he had committed extraneous acts of violence against Wendy or that he had engaged in the abuser's pattern of behavior that McAllister had described, thus influencing the jury to convict him for being an abuser in general. Here, McAllister's description of the cycle of violence, victim behavioral characteristics, and subsequent opinion finding similarity with Wendy's behavioral patterns naturally assumes the presence of abuse, but it does not suggest a decision on an irrational basis beyond that of the underlying assault. *See Duckett*, 797 S.W.2d at 913 (noting child sexual abuse accommodation syndrome evidence assumes the presence of abuse but properly explains sexually abused child's reactions to it). Moreover, the testimony of Wendy, Haddix, Parsons, and Burnett suggested that a history of domestic violence existed and that Wendy's relationship with Russell shared some of the typical relationship characteristics about which McAllister testified. Russell also argued that McAllister's testimony was unfairly prejudicial

10

because it amounted to improper bolstering. While McAllister's testimony tends to make Wendy's testimony more plausible, it is well-settled that we should not exclude otherwise admissible substantive evidence for mere injury to an appellant's case. *See Pawlak v. State*, 420 S.W.3d 807, 811 (Tex. Crim. App. 2013) (noting that Rule 403 excludes only unfairly prejudicial evidence because "all evidence against a defendant is, by its very nature, designed to be prejudicial").

Having examined the relevant factors in this case, we find that the trial court's decision to admit McAllister's testimony was within the zone of reasonable disagreement, and therefore, the trial court acted within its discretion. *See Montgomery*, 810 S.W.2d at 391. Accordingly, we overrule this point of error.

We affirm the trial court's judgment.

Bailey C. Moseley
Justice

Date Submitted: July 10, 2017
Date Decided: August 15, 2017

Do Not Publish

11