# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

---

### NO. 03-19-00727-CR

---

**Levin Morgan, Appellant**

**v.**

**The State of Texas, Appellee**

---

#### FROM COUNTY COURT AT LAW NO. 2 OF BELL COUNTY
#### NO. 2C17-01518, HONORABLE JOHN MICHAEL MISCHTIAN, JUDGE PRESIDING

---

### M E M O R A N D U M   O P I N I O N

A jury convicted Levin Morgan of the Class A misdemeanor offense of assault causing bodily injury to a family member, his former live-in girlfriend C.T. *See* Tex. Penal Code § 22.01(a)(1), (b)(2). The trial court assessed punishment at 300 days' confinement in the Bell County Jail. *See id.* § 12.21 (providing punishment by fine not to exceed $4,000, confinement in jail for a term not to exceed one year, or both such fine and confinement). On appeal, Morgan contends that the evidence was insufficient to support his conviction. We will affirm the trial court's judgment of conviction.

## BACKGROUND

At trial, the jury heard testimony about the charged assault from two witnesses, C.T. and Killeen Police Officer Andrew Cruz.[1] Officer Cruz testified that he was on patrol when he was dispatched to a residence on a domestic-violence call. Outside the residence, he spoke with C.T. and a witness named Darlene,[2] but not Morgan, who had fled.

C.T. testified that she and Morgan had gotten into an altercation while sitting in his truck parked outside her home and that Morgan hit her in the face. She then jumped out of the truck and ran inside her house. C.T. denied that anyone else was in the truck when the assault occurred. She also denied calling the police.

Officer Cruz noticed that C.T. had visible "swelling and redness to the left side of her face right around the eye area," and there was an indication of pain from these injuries. Photographs of C.T.'s facial injuries were admitted into evidence. Officer Cruz completed a report and requested that C.T. provide a written statement about the events, as well as a "Domestic Violence—Victim Statement." In her victim statement, C.T. stated that "Levin Morgan," her "ex-boyfriend," "punched [her] in [her] left eye" and as a result of that assault, she had "[a] swollen eye and redness."

About a year after the charged offense, C.T. asked a detective not to proceed with the charges against Morgan. She stated that she "wanted it [the case] to be over and done with." She testified that her kids and Morgan's attended the same school and were in the same class, and that she continued to babysit Morgan's son and communicate with Morgan by text and through social media after the charged offense.

---

[1] C.T. was reluctant to testify but appeared pursuant to subpoena.

[2] Officer Cruz did not know Darlene's last name, and it is not reflected in the record.

Almost two years after the charged offense, C.T. wrote an affidavit of non-prosecution at Morgan's request and went with him to a bank to have it notarized. C.T. testified that Morgan told her what to say in the affidavit, including statements that "nothing happened," and that "the neighbors didn't see anything" because the argument occurred inside the residence. C.T. also testified that she felt pressured to write the affidavit, which Morgan cosigned. One part of the affidavit states that "on the date in question," C.T. was thirty-five weeks pregnant and had been diagnosed with cancer, for which she was "heavily medicated." C.T. testified on cross-examination that she was receiving radiation treatment on the date of the charged offense and that it was possible that she had consumed alcohol that evening. She acknowledged that if she had been drinking, and if she were on medications, her ability to write a written statement might have been compromised, and she "guess[ed]" that her statement may have been more unreliable than it would have been otherwise.

Officer Cruz acknowledged during cross-examination that he did not ask C.T. if she was on any prescribed medication or consumed any alcohol. But he also acknowledged that when he had someone write a statement, he took precautions to make sure that the person was not under the influence of a narcotic or drug. Further, Officer Cruz testified that he had been trained to make arrests for the offense of driving while intoxicated (DWI), and that C.T. exhibited no glassy eyes, had no odor of alcohol on her breath, showed no noticeable signs of impairment, and did not appear to be "under the influence" when she made her statement.

On redirect, C.T. testified that although she had cancer and received treatment, she was clear about being hit in the face, that her injuries that day came from Morgan, and that no one else was in the truck besides she and Morgan when she was assaulted. C.T. also confirmed the accuracy of her original assault complaint:

3

[State]: On the date of [the charged offense] December 1st, 2016—I know you wrote this retraction—on that day, with those injuries, did he assault you?

[C.T.]: Yes.

[State]: Okay. And that's the accurate version; is that correct?

[C.T.]: Yes.

Persuaded by the evidence showing that the charged assault occurred, the jury convicted Morgan. The trial court assessed punishment, and this appeal followed.

## DISCUSSION

Morgan contends that the evidence was insufficient to support his conviction "because there is only a modicum of evidence that [he] struck or caused any injuries to [C.T.]."

When, as here, a defendant challenges the legal sufficiency of the evidence supporting his conviction, we consider the evidence in the light most favorable to the verdict and determine whether "*any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *See Jackson v. Virginia*, 443 U.S. 307, 319 (1979); *Nisbett v. State*, 552 S.W.3d 244, 262 (Tex. Crim. App. 2018). We defer to the jury's resolution of conflicts in the evidence, weighing of the testimony, and drawing of reasonable inferences from basic facts to ultimate facts. *Isassi v. State*, 330 S.W.3d 633, 638 (Tex. Crim. App. 2010); *see Chambers v. State*, 805 S.W.2d 459, 461 (Tex. Crim. App. 1991) (noting that "[a]s factfinder, the jury is entitled to judge the credibility of witnesses, and can choose to believe all, some, or none of the testimony presented by the parties").

4

We apply the same standard to direct and circumstantial evidence. *Isassi*, 330 S.W.3d at 638. Circumstantial evidence is as probative as direct evidence in establishing a defendant's guilt, and circumstantial evidence can alone be sufficient to establish guilt. *Nisbett*, 552 S.W.3d at 262. Each fact need not point directly and independently to the defendant's guilt if the cumulative force of all incriminating circumstances is sufficient to support the conviction. *Id*. Our "role on appeal is restricted to guarding against the rare occurrence when the factfinder does not act rationally." *Id*.

A person commits the offense of assault if he intentionally, knowingly, or recklessly causes bodily injury to another. Tex. Penal Code § 22.01(a)(1). "Bodily injury" is defined in the Penal Code to include "physical pain" and "impairment of physical condition." *Id.* § 1.07(a)(8). Morgan challenges only the "bodily injury" element, denying that he hit C.T. and that he injured her by hitting her.

However, C.T.'s testimony established that she was hit in the face, that her injuries came from Morgan, and that there was no one other than she and Morgan in the truck when she was assaulted. The jury had the "Domestic Violence—Victim Statement" that C.T. completed on the date of the offense specifying that "Levin Morgan," her "ex-boyfriend," "punched [her] in [her] left eye" and as a result of that assault, she had "[a] swollen eye and redness." The jury saw photographs of C.T.'s face that Officer Cruz took when he reported to the scene. Officer Cruz noticed visible "swelling and redness to the left side of her face right around the eye area" and stated that there was an indication of pain from these injuries. *See Scugoza v. State*, 949 S.W.2d 360, 362-63 (Tex. App.—San Antonio 1997, no pet.) (noting that responding officer's observations corroborated victim wife's initial story and rejecting defendant's contention that his conviction for assaulting his wife could not stand because he and

5

his wife denied any assault or injury occurred). Moreover, when C.T. was asked, given the "retraction" that she wrote, whether Morgan assaulted her on the date of the charged offense, C.T. confirmed that he did.

Morgan contends that C.T.'s initial statement is "suspect" because she was "heavily medicated for treatment of cancer" and "probably drinking on the day she called police."[3] But Officer Cruz testified that he has been trained to make DWI arrests and that C.T. exhibited no glassy eyes, had no odor of alcohol on her breath, showed no other noticeable signs of impairment, and did not appear to be "under the influence" when she made her statement. Morgan notes that C.T. continued to babysit his son and communicate with him through social media after the charged offense. However, their subsequent contact with each other does not nullify the evidence at trial showing that the assault happened or prevent his conviction for that offense. *See, e.g.*, *Gaeta v. State*, No. 05-14-01202-CR, 2016 Tex. App. LEXIS 7422, at *5, *21 (Tex. App.—Dallas July 12, 2016, no pet.) (mem. op., not designated for publication) (affirming conviction for misdemeanor assault family violence although victim continued dating defendant for six months after his arrest for that assault); *Cervantes v. State*, No. 05-03-01137-CR, 2004 Tex. App. LEXIS 8037, at *3, *11 (Tex. App.—Dallas Sept. 1, 2004, no pet.) (op., not designated for publication) (affirming misdemeanor assault conviction although defendant and her boyfriend "had apparently reconciled after the assault"). Notably here, Morgan acknowledges the consistency between C.T.'s initial statements about the charged offense and her testimony before the jury, stating that "[a]t trial, [C.T.] reiterated what she had initially told Officer Cruz."

---

[3] As we have noted, C.T. testified that she did not call the police.

6

As the fact finder, the jury was the judge of the credibility of the witnesses and could choose to believe all, some, or none of the testimony presented. *Chambers*, 805 S.W.2d at 461. Thus, the jury could have credited the evidence at trial showing that Morgan struck C.T. in the face and discredited Morgan's attempts to minimize that evidence by pointing to the notarized statement that C.T. completed at his direction and her "guess" about any effect that cancer-treatment medications and possible alcohol consumption might have had on her written statements. By convicting Morgan of the charged assault, the jury resolved any conflicts in the evidence and made a credibility determination favoring C.T.'s initial statement to police that Morgan hit her and her testimony at trial that the assault happened. *See id.* (noting that "[t]he jury observed the complainant's demeanor and was entitled not only to reconcile any such conflicts, but even to disbelieve her recantation"); *Hernandez v. State*, 280 S.W.3d 384, 386 (Tex. App.—Amarillo 2008, no pet.) (concluding that sufficient evidence supported family-violence conviction because jury heard victim's statements made to police and others on night of offense that defendant assaulted her, and jury could have disregarded her subsequent testimony referencing execution of non-prosecution affidavit and offering alternative explanations for red marks seen on her face); *see also Zuniga v. State*, No. 04-18-00124-CR, 2018 Tex. App. LEXIS 7399, at *8, *10 (Tex. App.—San Antonio Sept. 5, 2018, no pet.) (mem. op., not designated for publication) (noting that "[i]t is not uncommon for victims of domestic violence to recant their accusations" and that jurors could have believed that victim's statements to law enforcement on day of assault were accurate and disregarded her testimony contradicting those statements); *Gaeta*, 2016 Tex. App. LEXIS 7422, at *21 ("In convicting [defendant] of assault, the jury resolved the conflicting evidence in this case and made a credibility determination to believe [victim]'s initial statement that [defendant] hit her."). We defer to the jury's credibility

7

determinations and the jury's resolution of any evidentiary conflicts. *See Jackson*, 443 U.S. at 319; *Isassi*, 330 S.W.3d at 638; *Chambers*, 805 S.W.2d at 461.

The cumulative force of all the evidence presented at trial, considered in the light most favorable to the verdict, shows that a rational jury could have found beyond a reasonable doubt that Morgan struck C.T.—his former live-in girlfriend—causing her bodily injury. *See* Tex. Penal Code §§ 1.07(a)(8), 22.01(a)(1); *Nisbett*, 552 S.W.3d at 262; *Hernandez*, 280 S.W.3d at 386; *see also Gaeta*, 2016 Tex. App. LEXIS 7422, at \*21. Accordingly, we conclude that there was more than "a mere modicum of evidence" showing that Morgan struck C.T. causing injury to her, supporting his conviction for assault causing bodily injury to a family member. *Cf. Jackson*, 443 U.S. at 320.

We overrule Morgan's appellate issue.

## CONCLUSION

We affirm the trial court's judgment of conviction.

_____

Jeff Rose, Chief Justice

Before Chief Justice Rose, Justices Baker and Triana

Affirmed

Filed: August 31, 2020

Do Not Publish