

# COURT OF APPEALS
## SECOND DISTRICT OF TEXAS
## FORT WORTH

## NO. 02-17-00053-CR

MACMICHAEL KELECHI NWAIWU        APPELLANT

V.

THE STATE OF TEXAS        STATE

----------

### FROM COUNTY CRIMINAL COURT NO. 5 OF TARRANT COUNTY
### TRIAL COURT NO. 1401341

----------

## MEMORANDUM OPINION[1]

----------

## I. Introduction

Appellant MacMichael Kelechi Nwaiwu appeals his conviction for assault causing bodily injury to a family member for which the trial court placed him on two years' community supervision. In two points, Nwaiwu argues that the trial court abused its discretion by denying one of his challenges for cause and by

---

[1]*See* Tex. R. App. P. 47.4.

allowing the State's domestic-violence expert to testify about domestic violence in general and typical behaviors of victims of such violence. Because we conclude that the trial court did not abuse its discretion by denying Nwaiwu's challenge for cause and because we conclude that the trial court properly determined that the State's witness qualified as an expert and that her testimony would aid the jury, we will affirm the trial court's judgment.

## II. BACKGROUND

Aaron and Valerie Kreag were driving to Southlake Town Center to see a movie when they saw a car stopped along Highway 1709. They also observed something flying out of that car's window. The couple decided to stop because they thought that someone in the car might need medical attention. When the Kreags pulled up parallel to the car, both Aaron and Valerie could see Nwaiwu on top of a slumped-over woman, striking her face, head, and neck with both of his hands. The woman was later identified as Nwaiwu's girlfriend (Girlfriend).

According to Aaron, Girlfriend was screaming, "Help me, help me," while also attempting to avoid Nwaiwu's strikes. Aaron immediately parked his vehicle, walked over to the driver's side of Nwaiwu's car, and drew his gun—ordering Nwaiwu to stop hitting Girlfriend and to get out of the car. Another passing witness saw Aaron holding the gun toward Nwaiwu and, believing that a road-rage incident was occurring, called 911.

Multiple officers were dispatched. Southlake Police Officer Nathaniel Anderson arrived on the scene and ordered both men to lie on the ground.

2

Because Aaron was armed, Anderson said that he initially focused on him but that Aaron showed no signs of aggression and was immediately disarmed. According to Anderson, he saw scratches on Girlfriend's face. He said she also demonstrated how Nwaiwu had hit her with an open hand but denied being hit with his fists.

Southlake Police Corporal Jeff Paul said that when he arrived, he spoke with Girlfriend. According to Paul, Girlfriend was emotionally upset and crying. Paul said that Girlfriend had a cut on the inside of her lip. Southlake Police Detective Weston Wood testified that Girlfriend was very distraught and repeatedly said, "He beat me." Southlake Police Officer Kevin Diehl also arrived on the scene, handcuffed Nwaiwu, and searched him for weapons. Diehl described Nwaiwu as being angry and agitated. Diehl also said that he could see Girlfriend crouched toward the passenger side door clearly in distress, breathing heavily and sniffling. Diehl believed that she was injured or hurt.

At trial, Girlfriend denied that Nwaiwu had physically assaulted her. She explained that Nwaiwu had grabbed her soda and that when she went to grab it back, it spilled on both of them. Girlfriend said that they both took clothing from the back of the car, wiped themselves, and then flung the clothing out of the window. She also said that their struggle was mutual and that anything she had said to the contrary was coerced by the police or was due to her lack of experience in being questioned by police.

3

During its case in chief, the State called Beth Hollingsworth, a licensed marriage and family therapist who works with domestic violence victims at One Safe Place and in private practice. Over Nwaiwu's objection, Hollingsworth explained that there are three phases in a cycle of violence. First, there is a "tension building" phase where the abuser ensures that he has power and control over the victim and the victim feels that she is "walking on eggshells." Second, there is the "abusive incident" where the abuser, through force, makes the victim understand that the abuser has power over her. And third, there is the "honeymoon" phase where the abuser apologizes and either promises to seek help or promises that the abuse will never happen again.

Hollingsworth further explained the power-and-control wheel, wherein an abuser uses coercion, threats, intimidation, and even financial abuse to assert control over the victim. She also discussed the concepts of minimization and denial and why sometimes a victim will feel safer by minimizing or denying the abuse. Finally, Hollingsworth discussed "lethality" assessments—that is, when the abuse is most dangerous for a victim.

A jury found Nwaiwu guilty of assault causing bodily injury to a family member. After hearing punishment-phase evidence, the trial court assessed punishment at 180 days in jail, suspended the imposition of the sentence, and placed Nwaiwu on community supervision for two years. This appeal followed.

4

### III. DISCUSSION

### A.    The Trial Court's Denial of Nwaiwu's Challenge for Cause

In his first point, Nwaiwu argues that the trial court abused its discretion by denying his challenge for cause to Veniremember 8, ostensibly because she had demonstrated bias or prejudice against him and the law of the case.  The State counters that Veniremember 8 repeatedly stated that she would afford Nwaiwu the presumption of innocence and require the State to prove his guilt beyond a reasonable doubt and that thus the trial court did not abuse its discretion.  We agree with the State.

During voir dire, as the prosecutor was asking the venire panel whether there was anyone who presumed that Nwaiwu was guilty simply based on his being the defendant in this case, a few veniremembers suggested that they would automatically believe that Nwaiwu had done something wrong.  When the prosecutor asked Veniremember 8 how she felt, Veniremember 8 said, "I do.  I feel like either -- I don't look at him and think he's -- anything happened, but either somebody had it out for him or something happened."  But after further questioning, Veniremember 8 said that she thought she could start with a "clean slate" and "would give [Nwaiwu] a fair trial."

Later, while being questioned by the prosecutor in individual voir dire examination, Veniremember 8 said that she understood that the State had to prove its case beyond a reasonable doubt, that she would afford Nwaiwu the presumption of innocence, and that she would not hold the fact that he was the

5

defendant against him. In response to defense counsel's question, Veniremember 8 explained her initial response in voir dire: "Well, I said there's some reason he's here. I don't know if it's what he did or somebody had something against him like in anger or something like that. I don't know." When defense counsel questioned her further, Veniremember 8 said again that she thought she could give Nwaiwu a fair trial and also said, "I don't think [Nwaiwu is] guilty until he's proven guilty."

We review a trial court's ruling on a challenge for cause for an abuse of discretion. *Ladd v. State*, 3 S.W.3d 547, 559 (Tex. Crim. App. 1999), *cert. denied*, 529 U.S. 1070 (2000). When reviewing a trial court's decision to grant or to deny a challenge for cause, we look at the entire record. *Feldman v. State*, 71 S.W.3d 738, 744 (Tex. Crim. App. 2002). We give great deference to the trial court's decision because the trial judge is present to observe the demeanor of the veniremember and to listen to her tone of voice. *Id.* Particular deference is given when the potential juror's answers are vacillating, unclear, or contradictory. *Id.*; *King v. State*, 29 S.W.3d 556, 568 (Tex. Crim. App. 2000).

Here, even assuming that Veniremember 8's initial response was unclear, she nonetheless repeatedly said that she would afford Nwaiwu a fair trial, that she would presume he was innocent until proven guilty, and that she would hold the State to its burden of proof (beyond a reasonable doubt). Based on the entire record, we hold that the trial court did not abuse its discretion by denying Nwaiwu's challenge for cause to Veniremember 8. *See Strahan v. State*, 306

6

S.W.3d 342, 346–47 (Tex. App.—Fort Worth 2010, pet ref'd) (holding that trial court did not abuse discretion by denying defendant's challenge for cause when veniremember said she felt "uncomfortable" with the subject matter of the case, would try to hold the State to its burden, and had not unequivocally stated one way or the other that she could not be fair). We overrule Nwaiwu's first point.

## B.    Expert-Witness Testimony

In his second point, Nwaiwu argues that the trial court abused its discretion by allowing Hollingsworth to testify as a domestic-violence expert. Specifically, Nwaiwu argues that Hollingsworth's testimony was not relevant because there is no evidence in the record that the couple had a history of domestic violence, Hollingsworth had no personal knowledge about Nwaiwu and Girlfriend's relationship, and Girlfriend testified for the defense that no assault had occurred. It is not clear from Nwaiwu's brief whether he is challenging Hollingsworth's qualifications to testify as an expert. The State counters that Hollingsworth's testimony was reliable given Hollingsworth's qualifications and that it was relevant because Girlfriend had told officers that Nwaiwu had assaulted her but at trial she testified for the defense that no assault had occurred. We agree with the State.

We review the trial court's determination as to the admissibility of expert testimony for an abuse of discretion. *Montgomery v. State*, 810 S.W.2d 372, 391 (Tex. Crim. App. 1991) (op. on reh'g). Expert testimony is admissible when scientific, technical, or other specialized knowledge will assist the factfinder in

7

understanding the evidence or in determining a fact issue. Tex. R. Evid. 702; *Cohn v. State*, 804 S.W.2d 572, 575 (Tex. App.—Houston [14th Dist.] 1991), *aff'd*, 849 S.W.2d 817 (1993). Evidence admissible under Rule 702 may include testimony which compares general or classical behavioral characteristics of a certain type of victim with the specific victim's behavior patterns. *See Duckett v. State*, 797 S.W.2d 906, 917 (Tex. Crim. App. 1990) (holding testimony of expert on whether the reaction of complaining child was similar to the reaction of most victims of child abuse was helpful to the jury in determining if an assault occurred); *Fielder v. State*, 756 S.W.2d 309, 321 (Tex. Crim. App. 1988) (holding that expert testimony aided factfinder where expert explained inconsistency in appellant's behavior consistent with that of typical battered women).

Because the average juror will not typically be familiar with the effect of domestic violence on victims and the dynamics of the relationship between abuser and victim, expert testimony has generally been held to be admissible to explain recantations, delays in reporting, lies to the police, and why a complainant would continue living with a family member after an alleged assault. *See Salinas v. State*, 426 S.W.3d 318, 323 (Tex. App.—Houston [14th Dist.] 2014) (op. on reh'g), *rev'd on unrelated grounds*, 464 S.W.3d 363 (Tex. Crim. App. 2015); *Dixon v. State*, 244 S.W.3d 472, 480 (Tex. App.—Houston [14th Dist.] 2007, pet. ref'd); *Scugoza v. State*, 949 S.W.2d 360, 363 (Tex. App.—San Antonio 1997, no pet.).

Specifically as it relates to this case, multiple courts have held that a trial court does not abuse its discretion by allowing an expert witness to testify regarding the cycle of violence in a domestic setting when the victim testifies for the defendant or recants an earlier claim of abuse. *See Mendoza v. State*, No. 08-13-00293-CR, 2015 WL 5999596, at *2, *4–5 (Tex. App.—El Paso Oct. 14, 2015, pet. ref'd) (not designated for publication) (holding testimony regarding cycle of family violence relevant when assault was witnessed by third party but victim refused to cooperate with police and testified for defense); *Capello v. State*, No. 03-05-00553-CR, 2006 WL 2453021, at *4 (Tex. App.—Austin Aug. 25, 2006, pet. ref'd) (mem. op., not designated for publication) (determining that expert testimony on cycle of abuse was relevant because it assisted jury in understanding why victim of domestic violence might lie to police). Furthermore, a trial court does not abuse its discretion by allowing an expert witness to testify about domestic violence in general and the typical behaviors of victims of abuse even though the witness has no personal knowledge of the defendant and victim. *See Scugoza*, 949 S.W.2d at 363 (holding that trial court did not abuse its discretion by allowing witness to testify to general domestic violence behaviors despite having no personal knowledge of defendant and victim).

Here, Hollingsworth testified regarding domestic violence in general and typical behaviors of victims of domestic violence. Hollingsworth did not purport to have any direct or personal knowledge of Nwaiwu and Girlfriend's relationship,

9

nor did she express a direct opinion regarding Girlfriend's credibility. Hollingsworth's testimony described the cycle of violence in domestic-violence situations, "a topic with which the average lay person could not be expected to be familiar." *Id.* And her testimony was relevant to explain why a victim of abuse would change her story regarding an abusive incident and why a victim might testify on behalf of her alleged abuser. Indeed, Girlfriend told police on the scene that Nwaiwu had assaulted her, but at trial she testified for the defense and said that no assault had occurred. *See id.* (holding that trial court did not abuse its discretion by allowing expert testimony describing domestic violence in general and typical behaviors of victims when victim's testimony at trial was inconsistent with her previous report to police). Thus, the trial court did not abuse its discretion by allowing Hollingsworth to testify.

To the extent that Nwaiwu is arguing that Hollingsworth was not qualified to testify regarding domestic violence in general terms, we conclude that the trial court did not abuse its discretion by finding her qualified to testify. The record reflects that Hollingsworth has a master's degree in marriage and family therapy. She has worked with approximately 1500 domestic violence victims over the past eleven years at One Safe Place or in private practice. She also co-wrote a family therapy book entitled *Marriage and Family Therapy: A Practice-Oriented Approach*, and she has taught classes on the dynamics of family violence relationships at both Texas Christian University and Texas Wesleyan University. Furthermore, she has testified as a domestic-violence expert before. Given her

10

training and experience, we conclude that the trial court did not abuse its discretion by finding that Hollingsworth was qualified to offer her expert assessment of issues relating to domestic violence, including the cycle of violence. *See Lessner v. State*, No. 02-15-00400-CR, 2016 WL 4473263, at *1–3 (Tex. App.—Fort Worth Aug. 25, 2016, no pet.) (mem. op., not designated for publication) (holding that licensed master social worker and executive director of family crisis center was qualified to give expert testimony on the dynamics of family violence and typical behavior of domestic violence victims in relation to their abuser); *see also Brewer v. State*, 370 S.W.3d 471, 473–74 (Tex. App.—Amarillo 2012, no pet.) (holding that master social worker with specialized training employed by police to work with domestic violence victims qualified to give expert testimony regarding the dynamics of domestic violence); *Scugoza*, 949 S.W.2d at 363 (holding that program services director of county women's shelter qualified to give expert testimony describing cycles of spousal abuse). We overrule Nwaiwu's second point.

## IV. CONCLUSION

Having overruled both of Nwaiwu's points on appeal, we affirm the trial court's judgment.

/s/ Bill Meier
BILL MEIER
JUSTICE

11

PANEL:  MEIER, KERR, and PITTMAN, JJ.

DO NOT PUBLISH
Tex. R. App. P. 47.2(b)

DELIVERED:  August 9, 2018