**AFFIRM; and Opinion Filed July 29, 2019**



**In The**

# Court of Appeals
# Fifth District of Texas at Dallas

## No. 05-17-00782-CR

**MUSTAPHA RAHMAN COKER, Appellant**
**V.**
**THE STATE OF TEXAS, Appellee**

**On Appeal from the 194th Judicial District Court**
**Dallas County, Texas**
**Trial Court Cause No. F-1632844-M**

## MEMORANDUM OPINION

Before Justices Brown, Schenck, and Pedersen, III
Opinion by Justice Pedersen, III

Appellant Mustapha Rahman Coker was charged by indictment with the offense of assault

family violence by impeding breathing or circulation. A jury convicted him of the lesser-included

misdemeanor offense of assault family violence. The trial judge sentenced him to one year of

confinement, probated, in the county jail and a $500 fine. In one issue on appeal, appellant

challenges the trial court's admission of expert testimony. We affirm the trial court's judgment.

## Background

Appellant does not challenge the sufficiency of the evidence to support his conviction.

Therefore, we relate only such evidence as is necessary to understand his appellate issue. The

victim of appellant's assault was his wife, Amber Harrison. Harrison testified that after she arrived

home from work, appellant asked why she was late, backed her up against a wall, and began yelling

at her. As the argument escalated, they moved into the kitchen where Harrison grabbed a knife to defend herself. When appellant left the room, Harrison went to her bedroom and went to sleep. Harrison was awakened by appellant entering her bedroom and screaming at her. She testified that appellant dragged her out of bed and onto the floor where he began to strangle her. As she struggled, appellant struck her in the face with his fist, and then placed her in a choke hold that caused her to black out. Appellant then took Harrison's phone and left the room. Harrison logged into Facebook and asked for assistance. An acquaintance saw Harrison's Facebook posting and called 911.

Irving Police Officer Sean Bissinger testified that on December 11, 2015, he responded to a 911 call of domestic violence. Harrison was nervous and appeared to be crying. She said she was afraid of her husband and just wanted to get away. Officer Bissinger noted that Harrison appeared to have recent injuries to her shoulder, her right elbow, and the side of her face and neck. He testified that the markings on Harrison's neck were indicative of possible strangulation. Officer Bissinger also interviewed appellant who stated that nothing had happened. Appellant was arrested and indicted on one count of assault family violence by impeding normal breathing or circulation.

During its case in chief, the State called Ruth Guerreiro, a licensed clinical social worker at the Genesis Women's Shelter, to testify about the dynamics of domestic violence in a family relationship and to explain the three-stage "cycle of violence." The State also presented Dr. Petra Rahaman, a forensic pathologist at the Southwestern Institute of Forensic Science, to testify regarding the external and internal injuries caused by strangulation.

Appellant testified on his own behalf. He denied assaulting Harrison and suggested that her motive for falsely accusing him was to extort money from him. He described recording a

–2–

telephone conversation with Harrison in which she said she would drop the charges, allow him to see their daughter, and return his personal belongings if he would pay her $40,000.

The jury found appellant guilty of the lesser-included misdemeanor offense of assault family violence. The trial court sentenced him to one year of confinement in the county jail and a $500 fine. The court suspended his sentence, and placed him on community supervision for eighteen months. Appellant's motion for new trial was overruled by operation of law, and this appeal followed.

### Expert Witness Testimony

In one issue on appeal, appellant argues that the trial court erred by allowing Guerreiro, the State's domestic violence expert witness, to opine on matters other than the cycle of family violence—the limited purpose for which Guerreiro's expert testimony was offered. We review a trial court's ruling on the admissibility of expert testimony for an abuse of discretion. *Wolfe v. State*, 509 S.W.3d 325, 335 (Tex. Crim. App. 2017). We uphold the trial court's decision as long as it is within the zone of reasonable disagreement. *Blasdell v. State*, 470 S.W.3d 59, 62 (Tex. Crim. App. 2015).

The admissibility of expert testimony is governed by Texas Rule of Evidence 702, which provides that "[a] witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue." TEX. R. EVID. 702. Before admitting expert testimony under Rule 702, a trial court must determine that (1) the witness is qualified as an expert by reason of her knowledge, skill, experience, training, or education; (2) the subject matter of the testimony is an appropriate one for expert testimony; and (3) admitting the expert testimony will actually assist the factfinder in deciding the case. *Id.*; *see also Davis v. State*, 329 S.W.3d 798, 813 (Tex. Crim. App. 2010).

–3–

These requirements are commonly referred to as qualification, reliability, and relevance. *Vela v. State,* 209 S.W.3d 128, 131 (Tex. Crim. App. 2006).

At trial, the State called Guerreiro as an expert witness, and the trial court conducted a Rule 705(b) hearing.[1] Both parties questioned Guerreiro. She testified that she has a bachelor's degree in family science and a master's degree in social work. She stated she has been a counselor at Genesis Women's Shelter for six years and has been a licensed clinical social worker for four years. She is a board approved supervisor, which required extensive training. She is also certified in Eye Movement Desensitization and Reprocessing, a therapy used for trauma survivors. She stated that she specializes in counseling domestic violence victims and has counseled over one thousand people. She teaches classes and provides training pertaining to domestic violence. Although this was her first time to testify as an expert in a criminal trial, she has previously qualified as a domestic violence expert in family and immigration courts and has testified as an expert in four cases. With respect to this case, Guerreiro confirmed that she did not have any specific knowledge regarding the case, she had not interviewed the victim, and she had not conducted a social study with respect to the parties in this case.

During the Rule 705(b) hearing, Guerreiro was asked by defense counsel, "you are here solely to talk about the generalities and the cycle of family violence; is that accurate," and she answered in the affirmative. At the conclusion of the hearing, the trial court ruled, over objection, that Guerreiro would be allowed to testify at trial as an expert witness. Thus, the trial court determined that Guerreiro was qualified to give an opinion on the subject for which her testimony was offered—the cycle of violence.

---

[1] An adverse party in a criminal case has a procedural right to voir dire an expert under Rule 705(b) of the Texas Rules of Evidence. Under this rule, a trial court must grant a party's request to conduct a voir dire examination directed to the underlying facts or data upon which the opinion is based. This examination is conducted outside the presence of the jury. TEX. R. EVID. 705(b); *see also Shaw v. State*, 329 S.W.3d 645, 655 (Tex. App.—Houston [14th Dist.] 2010, pet. ref'd).

Notwithstanding the State's representations during the Rule 705(b) hearing that Guerreiro "is here for the sole purpose to talk about the cycle of violence," as the trial proceeded the State asked specific questions of Guerreiro regarding the facts of the case that went well beyond her opinion on the cycle of violence. To each of these questions, defense counsel timely objected that Guerreiro's testimony went beyond the limited purpose for which her expert testimony was offered. The trial court overruled these objections and thus did not restrict Guerreiro's testimony to a general discussion of the cycle of violence.

When Guerreiro was asked if she thought it was strange that Harrison could not recall where she got the knife she alleged she used to defend herself, defense counsel objected that such testimony was speculation and outside the scope of the cycle of violence. The trial court allowed Guerreiro to answer and opine about memory loss caused by traumatic events.

When Guerreiro was asked to opine about the recorded telephone conversation between the parties, defense counsel objected, arguing that the expert who had been offered for the generalities of family violence was being asked about specifics of this case. Counsel asserted that such testimony was outside the scope for which the expert had been offered. The trial court allowed Guerreiro to describe how appellant attempted to exert verbal control over Harrison during the phone call.

During her testimony, Guerreiro admitted that she had not conducted any research into strangulation but she had "read and learned about it." Nevertheless, the State asked if she knew how much pressure it would take to occlude or impede someone's breath or blood. Defense counsel objected that such testimony was outside the scope of Guerreiro's expertise. The trial court did not inquire into Guerreiro's qualifications to testify about the physical aspects of strangulation. Instead, the trial court overruled appellant's objection and allowed Guerreiro to discuss how much pressure it takes to occlude or impede a person's breath or blood.

When the State asked Guerreiro about the "feisty" way Harrison responded on cross examination, defense counsel objected and again argued that the State's expert witness was being asked to opine about the specifics of the case and was not restricting her testimony to generalities and the cycle of violence. The court overruled appellant's objection and allowed Guerreiro to testify that Harrison's behavior during cross examination was consistent with victims of domestic violence.

Appellate courts have found testimony by counselors regarding the cycle of violence in a domestic setting to be sufficiently reliable to uphold determinations that the counselors should be allowed to testify as experts. *See Runels v. State*, No. 03-18-00036-CR, 2018 WL 6381537, at *6 (Tex. App.—Austin Dec. 6, 2018, pet. ref'd) (mem. op., not designated for publication) (counselor's testimony based on concepts of the cycle of violence and the power-and-control wheel sufficiently reliable to uphold determination that counselor should be allowed to testify as expert); *Nwaiwu v. State*, No. 02-17-00053-CR, 2018 WL 3763899, at *2, *3 (Tex. App.—Fort Worth Aug. 9, 2018, pet. ref'd) (mem. op., not designated for publication) (determining that testimony from counselor, including portion explaining the power-and-control wheel, was reliable); *Brewer v. State*, 370 S.W.3d 471, 474 (Tex. App.—Amarillo 2012, no pet.) (upholding trial court's ruling allowing counselor to provide expert testimony regarding the three stage cycle of violence). In this case, however, appellant did not object to Guerreiro's testimony about the cycle of violence. He objected when her testimony ventured beyond the cycle of violence—beyond the actual subject for which her testimony had been offered and for which she had been qualified as an expert.

Appellant's objections to Guerreiro testifying about matters beyond the scope of her expertise were challenges to Guerreiro's qualifications and the reliability of her testimony. *See Martin v. State*, 246 S.W.3d 246, 258–59 (Tex. App.—Houston [14th Dist.] 2007, no pet.) (objection of "outside his range" sufficient to put trial court and opposing counsel on notice of

challenge to expert qualifications and reliability of testimony). A trial court's determination of an expert's qualifications requires a two-step inquiry: (1) whether the witness has a sufficient background in a particular field, and (2) whether that background goes to the matter on which the witness is to give an opinion. *Davis*, 329 S.W.3d at 813; *Vela*, 209 S.W.3d at 131. The proponent must establish that the expert has knowledge, skill, experience, training, or education regarding the specific issue before the court that would qualify the expert to give an opinion on that particular subject. *Vela*, 209 S.W.3d at 132. Thus, before allowing Guerreiro to expand her expert testimony beyond the cycle of violence, the court had an obligation to ensure that she truly had expertise concerning the additional subject about which she was offering an opinion.

The State had the burden of establishing that Guerreiro had the knowledge, skill, experience, training, or education regarding the specific issue before the court that would qualify her to give an opinion on that particular subject. *Davis*, 329 S.W.3d at 813. The focus is on the fit between the subject matter at issue and the expert's familiarity with it. *See Vela*, 209 S.W.3d at 133. In its "gatekeeping" role, the trial court has the responsibility to ensure that "those who purport to be experts truly have expertise concerning the actual subject about which they are offering an opinion." *Id*. at 132 (quoting *Broders v. Heise*, 924 S.W.2d 148, 153 (Tex. 1996)); *see also Brewer*, 370 S.W.3d at 474 (trial court carefully and properly limited expert's testimony to comport with her expertise). In this case, the trial court did not require the State to adequately establish Guerreiro's qualifications to testify about memory loss caused by traumatic events, appellant's attempts to verbally control Harrison during their recorded telephone conversation, physical attributes of strangulation, and the likely behavior of a domestic violence victim when cross examined at trial. Rather, when defense counsel objected to such testimony, the court simply referenced Guerreiro's education and experience and deemed that general background sufficient to qualify her as an expert witness on these matters. *See Vela*, 209 S.W.3d at 133 (referencing

education and background not deemed to be adequate inquiry into qualifications). Because no meaningful inquiry into Guerreiro's qualifications in those specific areas of expertise occurred, we conclude that the court abused its discretion by allowing such testimony to be admitted.

**Harm**

Having found that there was error in the admission of portions of Guerreiro's expert testimony, we must determine whether such error was harmless. In general, the erroneous admission or exclusion of evidence is nonconstitutional error governed by Rule 44.2(b) if the trial court's ruling merely offends the rules of evidence. For nonconstitutional errors in criminal cases, the error must be disregarded unless it affected the defendant's substantial rights. *See* TEX. R. APP. P. 44.2(b). A substantial right is not affected "when, after examining the record as a whole, the reviewing court has a fair assurance that the error did not influence the jury or had but a slight effect." *McDonald v. State*, 179 S.W.3d 571, 578 (Tex. Crim. App. 2005). "In assessing the likelihood that the jury's decision was adversely affected by the error, the appellate court should consider everything in the record, including any testimony or physical evidence admitted for the jury's consideration, the nature of the evidence supporting the verdict, the character of the alleged error and how it might be considered in connection with other evidence in the case." *Motilla v. State*, 78 S.W.3d 352, 355 (Tex. Crim. App. 2002). "The reviewing court may also consider the jury instructions, the State's theory and any defensive theories, closing arguments and even voir dire, if applicable." *Id*. at 355–56. Additionally, reviewing courts may examine whether the State emphasized the errors. *Id*. at 356.

Appellant complains that he was harmed by the admission of Guerreiro's improper testimony because such testimony indirectly informed the jury that the expert believed Harrison's allegations. According to the record, Guerreiro was not asked whether she believed Harrison was telling the truth. However, appellant argues that it was improper for Guerreiro to listen to

Harrison's testimony and claims against appellant, and then indirectly comment on their veracity by stating that Harrison's testimony and allegations were typical of what Guerreiro sees in her professional experience. Expert testimony that a particular witness is truthful is absolutely inadmissible under Rule 702. *See* TEX. R. EVID. 702; *Yount v. State*, 872 S.W.2d 706, 711 (Tex. Crim. App. 1993). However, "[e]vidence admissible under Rule 702 may include testimony which compares general or classical behavioral characteristics of a certain type of victim with the specific victim's behavior patterns." *See Nwaiwu*, 2018 WL 3763899, at *3. Thus, Guerreiro's testimony that Harrison's behavior was consistent with what she has seen in her professional experience was not an affirmation that she believed Harrison or that Harrison was telling the truth. It was a comparison of the general behavioral characteristics of a victim of domestic violence with Harrison's behavior in this case.

The record contains sufficient evidence on which the jury could have convicted appellant for assault family violence. Evidence of appellant's guilt was admitted through the testimony of Harrison, Dr. Rahaman, and Officer Bissinger, and the photographs of Harrison's injuries that were taken by Officer Bissinger. The admission of Guerreiro's testimony did not prohibit appellant from presenting his defensive theories that he was not abusive to Harrison, he did not yell at Harrison, he did not try to choke Harrison, and Harrison lied about all of the events in question.

The State briefly mentioned Guerreiro's testimony in its closing argument when discussing strangulation and why, after a first attempted strangulation, a domestic violence victim is eight hundred percent more likely to die. However, the jury was not persuaded that appellant impeded Harrison's breathing or circulation, and declined to convict him of the offense of assault family violence by impeding breathing or circulation. Instead, the jury convicted appellant of the lesser-included offense of assault family violence. Accordingly, we are satisfied that the erroneous

admission of Guerreiro's testimony regarding the physical aspects of strangulation did not affect appellant's substantial rights.

Although the district court erred by allowing Guerreiro to expand her testimony beyond the cycle of violence on several occasions, the errors did not affect appellant's substantial rights and, accordingly, did not result in harm warranting a reversal of his conviction. For all the reasons previously given, we overrule appellant's sole issue on appeal.

## Conclusion

We affirm the trial court's judgment.

/Bill Pedersen, III/
BILL PEDERSEN, III
JUSTICE

Do Not Publish
TEX. R. APP. P. 47
170782F.U05

Schenck, J., concurring



# Court of Appeals
# Fifth District of Texas at Dallas

## JUDGMENT

MUSTAPHA RAHMAN COKER,
Appellant

No. 05-17-00782-CR     V.

THE STATE OF TEXAS, Appellee

On Appeal from the 194th Judicial District
Court, Dallas County, Texas
Trial Court Cause No. F-1632844-M.
Opinion delivered by Justice Pedersen, III.
Justices Brown and Schenck participating.

Based on the Court's opinion of this date, the judgment of the trial court is **AFFIRMED**.

Judgment entered this 29th day of July, 2019.